## TEXAS & NEW ORLEANS RAILWAY COMPANY v. PAT CONWAY.

### Decided October 30, 1906.

**1.—Personal Injuries—Coupling Cars—Alleged Contributory Negligence.**

The plaintiff, a brakeman, in undertaking to couple two freight cars equipped with automatic couplings, placed his foot against one of the drawheads for the purpose of pushing it in place to meet the other drawhead as they came together; he expected it to yield about an inch; it in fact slid about six or eight inches, threw him off his balance, his foot slipped between the drawheads and was crushed. Evidence considered, and held not to sustain an assignment that the acts of plaintiff constituted negligence per se.

**2.—Rule of Company—Habitual Violation—Distinction.**

In this State it may be shown by circumstances, such as universal disregard and lack of effort to enforce, that a rule of a company for the government and guidance of its employes, has been abrogated or abandoned. A distinction is drawn, however, between a rule made for the company's own ends and purposes and one designed solely for the safety of its servants; it is only a rule of the first class that should be held abandoned by habitual violation. Justice Pleasants does not assent to this distinction.

**3.—Assumed Risk—Question of Fact.**

Whether or not the plaintiff did in fact see and know that the drawhead was out of repair, or ought to have seen it, under the circumstances stated, and so assumed the risk, was a question of fact for the jury under all the evidence.

**4.—Argument of Counsel—Reasonable Inference.**

Counsel for plaintiff in his opening argument, in speaking of a rule of the defendant company forbidding brakemen from using their feet in making couplings, said that the rule was never intended to prevent the practice, but only for use in defending litigation. The evidence showing that the rule had, in fact, never been enforced, the argument was not reversible error. In the very nature of things in argument the field of inference from a given or assumed state of facts is necessarily large.

**5.—Same—Reprimand—Withdrawal.**

When the language of counsel, although in distinct violation of the rules governing arguments before juries, is rebuked by the court, withdrawn by coun-

sel, and the jury are instructed by the court to disregard the same, it is ordinarily considered a sufficient correction of the error.

**6.—Contributory Negligence—Burden of Proof.**

The burden of establishing contributory negligence is upon the defendant in a suit for damages, except where the plaintiff's evidence convicts him prima facie of contributory negligence, in which event he must adduce proof explaining or excusing his apparent fault. Charge considered and approved.

**7.—Foreign Cars—Duty of Inspection.**

In this State the carrier's duty of inspection extends to cars of another company as well as to its own, whenever the carrier's servants are required to handle them. Where, in handling cars on a transfer track, the said cars being in the possession of another company and not intended to be used by defendant, a servant is injured by reason of defects in said cars, the master is responsible.

**8.—Excessive Verdict—Remittitur.**

Although the plaintiff's foot and ankle were crushed, and, after several months of severe pain, the leg was amputated between the ankle and knee, and his artificial limb up to the time of the trial caused him some pain, and the plaintiff was 30 years of age and earning between $80 and $100 per month, still, a verdict for $20,000 was excessive, and indicated that the jury was influenced by some improper motive. A remittitur of $5,000 required.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Baker, Botts, Parker & Garwood, Chester & Chester* and *J. S. McEachin,* for appellant.—The act of attempting to make the coupling with his foot, as appellee did, was so opposed to the dictates of common prudence that it may be said without hesitation or doubt that no careful person would have done so. It was negligence per se, and the proximate cause of the injury. Houston & T. C. Ry. v. Myers, 55 Texas, 117; Matthews v. Missouri, K. & T. Ry., 4 Texas Ct. Rep., 266; International & G. N. Ry. v. DeOllos, 8 Texas Ct. Rep., 211; Elmore v. Seaboard Air Line, 131 N. Car., 569; Darrocutts v. Chesapeake & O. Ry., 83 Va., 288; Karrer v. Detroit, G. H. & M. Ry., 76 Mich., 400; Richmond & D. Ry. v. Pannill, 89 Va., 552.

The verdict of the jury acquitting the defendant of contributory negligence is based upon insufficient evidence, and is manifestly against the truth of the case. Galveston, H. & S. A. Ry. v. Walker, 12 Texas Ct. Rep., 225; Houston & T. C. Ry. v. Myers, 55 Texas, 117; Gulf, C. & S. F. Ry. v. Wilson, 1 Texas Ct. Rep., 135; Gulf, C. & S. F. Ry. v. Wilson, 1 Texas Ct. Rep., 629; Willis v. Lewis, 28 Texas, 185; Dimmitt v. Robbins, 74 Texas, 441; Gulf, C. & S. F. Ry. v. Lovett, 7 Texas Ct. Rep., 721.

Appellant performed his work in a needlessly dangerous manner, and for that reason can not recover. Texas & P. Ry. v. Bradford, 66 Texas, 732; Welch v. Brainard, 65 N. W. Rep., 667; Moore v. Kansas City, F. S. & M. Ry. (Mo.), 12 A. & E. Ry. Cas., N. S., 580.

Where an injured party has assumed an unnecessarily exposed position, and such position is the proximate cause of his injury, he is not entitled to recover. Gulf, C. & S. F. Ry. v. Lovett, 7 Texas Ct. Rep., 721; Baltimore & P. Ry. v. Jones, 95 U. S., 439.

The plaintiff assumed the risk of coupling the cars by going in

between and using his feet, in the manner and under the circumstances shown by his testimony. Hynson v. St. Louis S. W. Ry. Co., 86 S. W. Rep., 928; Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Texas, 226; Galveston, H. & S. A. Ry. Co. v. Adams, 58 S. W. Rep., 831; San Antonio & A. P. Ry. v. Wallace, 76 Texas, 636; Galveston, H. & S. A. Ry. v. Brown, 63 S. W. Rep., 305; Rogers v. Galveston City Ry., 76 Texas, 505; St. Louis & S. F. Ry. Co. v. Nelson, 20 Texas Civ. App., 536; Matthews v. Missouri, K. & T. Ry., 4 Texas Ct. Rep., 266; Mexican Cent. Ry. Co. v. Shean, 18 S. W. Rep., 151; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 19; Texas, S. V. & N. W. Ry. Co. v. Guy, 23 S. W. Rep., 633; Elmore v. Seaboard Air Line, 131 N. Car., 569.

A verdict for twenty thousand dollars under the facts and circumstances enumerated in the foregoing assignment is grossly excessive. San Antonio & A. P. Ry. v. Connell, 66 S. W. Rep., 248; Galveston, H. & S. A. Ry. v. Bernard, 57 S. W. Rep., 686; Gulf, C. & S. F. Ry. v. Willson, 1 Texas Ct. Rep., 629; Gulf, C. & S. F. Ry. v. Willson, 1 Texas Ct. Rep., 135; Texas & Ft. S. Ry. v. Hartinett, 8 Texas Ct. Rep., 161.

It was not the province of the jury to determine where the burden of proof rested. The effect of the charge was to leave it to the jury to say upon which of the parties the burden of proof rested. Under the pleading and evidence, the burden was upon the plaintiff to acquit himself of contributory negligence, and the court should have so instructed the jury. Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 152; Texas & P. Ry. v. Murphy, 46 Texas, 363; Texas & N. O. Ry. v. Crowder, 63 Texas, 502; Missouri, K. & T. Ry. v. Jolly, 6 Texas Ct. Rep., 939; Dallas & W. Ry. v. Spicker, 61 Texas, 429; Murray v. Gulf, C. & S. F. Ry., 73 Texas, 4; Houston & T. C. Ry. v. Cowser, 57 Texas, 302; Ball v. City of El Paso, 5 Texas Civ. App., 221.

The correct rule, where cars of a foreign line are handled, is that appellant should have exercised ordinary care in the matter of furnishing safe appliances, and when that has been done, its full duty has been discharged. Galveston, H. & S. A. Ry. v. Perry, 10 Texas Ct. Rep., 669; International & G. N. Ry. v. Bell, 75 Texas, 51; St. Louis & S. W. Ry. v. Corrigan, 10 Texas Ct. Rep., 696; Alexander v. Robertson, 86 Texas, 511.

*Lovejoy & Malevinsky*, for appellee.—The plaintiff, Pat Conway, was not injured on account of an assumed risk. The great weight and preponderance of the credible testimony establishes the fact that his injuries were directly and proximately caused by the negligence of the defendant in demanding that Conway couple two cars, one of which had a coupling apparatus in a defective condition, and the undisputed evidence showed that he did not know of its defective condition until he was caught and injured. Texas & N. O. Ry. v. Bingle, 91 Texas, 288; Missouri, K. & T. Ry. v. Hannig, 91 Texas, 350; Dupree v. Alexander, 68 S. W. Rep., 739; Texas & Ft. S. Ry. v. Hartnett, 75 S. W. Rep., 809; Houston El. Co. v. Robinson, 76 S. W. Rep., 210; Texas & N. O. Ry. v. Kelly, 8 Texas Ct. Rep., 700.

Upon the proposition that the evidence was legally sufficient to justify the charge and verdict, see: Brown v. Sullivan, 71 Texas, 470; Houston

E. & W. T. Ry. v. Simpson, 81 S. W. Rep., 353; Ft. Worth & D. C. Ry. v. Robertson, 16 S. W. Rep., 1093; Texas & Pac. Ry. v. Curry, 64 Texas, 87; Schmitz v. St. Louis & I. M. & S. Ry. Co., 24 S. W. Rep., 477; Watson on Damages, sec. 319, p. 403; sec. 440, p. 556; Voorhies on Damages for Personal Injuries, sec. 172.

Upon the proposition that the verdict is not excessive we cite the following authorities: Texarkana & Ft. S. Ry. v. Tolliver, 11 Texas Ct. Rep., 632; injury, loss of leg; verdict, $19,500; Galveston, H. & S. A. Ry. v. Abbey, 68 S. W. Rep., 293; loss of leg; verdict, $16,000; Galveston, H. & N. Ry. v. Newport, 65 S. W. Rep., 657; loss of leg; verdict, $15,000; San Antonio & A. P. Ry. v. Connell, 66 S. W. Rep., 246; leg crippled; verdict, $16,000; Galveston, H. & S. A. Ry. v. Scott, 50 S. W. Rep., 477; loss of foot; verdict, $15,000; Galveston, H. & S. A. Ry. v. Hynes, 50 S. W. Rep., 624; loss of leg; verdict, $18,000; Gulf, C. & S. F. Ry. v. Shelton, 69 S. W. Rep., 653; loss of two legs; verdict, $35,000; Texas & N. O. Ry. v. Kelly, 8 Texas Ct. Rep., 702; legs paralyzed; verdict, $30,000; Ehrman v. Brooklyn City Ry., 14 N. Y. Sup., 336; loss of leg; verdict, $25,000; Williamson v. Brooklyn Heights Ry., 65 N. Y. Sup., 1054; loss of leg; verdict, $22,500.

The trial court did not err in that paragraph of its charge upon the burden of proof on the issue of contributory negligence, as set out in the ninth assignment of error. Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 152; Texas & P. Ry. v. Reed, 88 Texas, 439; International & G. N. Ry. v. Harris, 67 S. W. Rep., 315; Gulf, C. & S. F. Ry. v. Howard, 96 Texas, 585.; General Elec. Co. v. Murray, 7 Texas Ct. Rep., 219; Gulf, C. & S. F. Ry. v. Hill, 5 Texas Ct. Rep., 232.

GILL, Chief Justice.—Pat Conway brought this suit against the Texas & New Orleans Railway Company to recover damages for personal injuries alleged to have been sustained by him as a result of the negligence of the company.

Defendant answered by general denial, and specially pleaded assumed risk, contributory negligence and the fact that the cars which are alleged to have caused the injury were not in possession of the company nor intended to be incorporated in defendant's train.

A jury trial resulted in a verdict and judgment for $20,000 from which the defendant has appealed.

In June, 1903, the plaintiff was serving as brakeman on one of defendant's trains. When the train arrived at Nacogdoches it became necessary to set some of its cars on a track or spur connecting defendant's road with the Houston, East & West Texas Railway, which also passes that point. There were two cars already upon this track and under the control of the Houston, East & West Texas Railway Company. The engine and two or three cars were detached from defendant's train and backed in on a spur for the purpose named. In order to properly do the work it was necessary to couple together the two cars already on the track and several feet apart. This duty fell to the lot of plaintiff. He went between the cars, adjusted the coupling apparatus and signaled the engineer to back the cars together. The couplers though automatic failed to connect, whereupon at the signal of plaintiff the engineer moved the car forward about half a car length. Plaintiff

then discovered that the coupler on the stationary car was not in the position to meet exactly the face of the opposing coupler, so he signaled the engineer to back again and while the cars were slowly approaching and only a short distance away he undertook with his foot to push into position the draw-head of the standing car. The draw-heads came together, badly crushing his foot and ankle.

Up to this point the evidence is undisputed. Plaintiff's theory of the accident as disclosed by his testimony and that of his two witnesses is in substance as follows:

A draw-head in good repair has a lateral play in its bearings of about 1½ inches. It is usual and proper to adjust them either with the hand or the foot and no rule prescribes the proper method in this respect. It is also true that it can not always be told just exactly how much a draw-head must be moved until the opposite draw-head is very close—say within a foot or two of it. This was so in this instance, so the plaintiff placed his foot on the shoulder of the draw-head and waiting until the approaching draw-head was within a short distance gave it a push with his foot, holding with his hand to a rod on the standing car to balance himself. When he gave the push he expected the draw-head to yield about an inch. It in fact slid about six or eight inches, threw him off his balance, his foot slipped between the draw-heads and was crushed. He had not examined the draw-head to see if it had excessive play nor did he discover it was out of order in his cursory examination as to its proper adjustment when he first entered between the cars.

His fellow brakeman, Skinner, testified that he examined the draw-head a few minutes after the accident. That he found the draft timbers "chawed" out at the ends, the chafing irons gone and two inside draft timber bolts broken and that as a result the draw-head had a lateral play of about six or eight inches. He stated there was no trouble to see this condition when you went and looked at it. No one saw the accident except the plaintiff. The defendant also introduced several witnesses who testified positively that the draw-head was in perfect condition and had a lateral play not to exceed 1½ inches. The first effort made to couple the cars after the accident was successful.

Plaintiff admitted there was a printed rule of the company forbidding a brakeman to go in between cars, while in motion, for any purpose, but there was evidence tending to show that it had fallen into disuse for lack of observance and enforcement and that brakemen were not expected to observe it when the work required haste.

Skinner's testimony was sharply contradicted by defendant's witnesses and testimony tending to affect his credibility was adduced.

Under the first assignment the verdict is assailed as unsupported by the evidence on the ground that the accident was clearly shown to be due to plaintiff's negligent act in going between the moving cars and undertaking to adjust the draw-heads with his foot. It is argued on this point that the plaintiff's act was so opposed to the dictates of common prudence as to establish of itself contributory negligence on his part. The record does not contain a description of the construction and operation of the draw-heads in question so we can not proceed upon the theory that anything in their structure—if they were in good repair—rendered plaintiff's act imprudent or dangerous even had he left his

foot where he intended to place it until the draw-heads actually came in contact. In addition to this it came from the mouths of witnesses of both the litigants not only that the act of plaintiff in going between the cars and adjusting the draw-heads was a common practice of all brakemen, but that the company's rule was not observed nor was any effort made to enforce it.

In this state of the record we are unable to conclude that even a preponderance of the evidence appears to favor the assertion that plaintiff was negligent. Counsel for defendant in discussing Houston & T. C. Ry. v. Myers, 55 Texas, 117, in which it was held that it was negligent and an assumption of the risk for a brakeman to undertake to make a coupling with a piece of chain instead of the regular link and pin, remarks that in this case the plaintiff substituted his foot for the lever. This is not accurate. There is no hint in the record that the draw-head could have been adjusted laterally by the use of the lever. Cases are cited from other jurisdictions in which an effort to kick a draw-head into position is held to be negligence. In Darrocutt v. Chesapeake & O. Ry., 2 S. E. Rep., 511 (83 Va., 288), and in Karrer v. Detroit, G. H. & M. Ry., 43 N. W. Rep., 370 (76 Mich., 400) (two of the cases cited), a rule of the company held to be in force had much to do with the court's conclusion. In Elmore v. Seaboard Air Line, 42 S. E. Rep., 989 (131 N. Car., 569), the draw bar had no excessive lateral play and the injury was caused by a defect of which the plaintiff had knowledge, a recovery of course was properly denied.

In this State it may be shown by circumstances, such as universal disregard and lack of effort to enforce, that a rule has been abrogated or abandoned. It is also true in this State that the violation of a rule in actual force is not *per se* negligence. (Galveston, H. & S. A. Ry. Co. v. Adams, 94 Texas, 106; Railway Company v. Cornell, 69 S. W. Rep., 980.)

The third proposition is not germane to the assignment and will not be considered. The assignment is overruled.

However, the writer can not forbear to remark in passing that in his opinion there is room for distinction between a rule made for the railway company's own ends and purposes and one designed solely for the safety of the servant. If the former are persistently and generally ignored or violated without reprimand it may well be concluded that the company for its own reasons had abandoned them. But of rules falling within the second class the same can not fairly be said. Railways have at vast expense equipped their freight cars with safety coupling apparatus in response to a requirement of law. This equipment is chiefly designed for the protection of the life and limb of the operatives and enables them to couple and uncouple without going between the cars. The company in furtherance of the same purpose has published a printed rule advising its employes not only that they are not required to go in between the moving cars for any purpose, but that they are forbidden to do so. Surely the burden of enforcing this rule by discharging or suspending operatives who were not careful of their own safety ought not to be imposed on the company. Of course we have a different case where it is shown that the company insists upon the disregard of the rule in order to hasten the work. We speak only of the

doctrine that a rule may be shown to be inoperative by mere proof of habitual disregard and failure to enforce. To this Justice Pleasants does not assent. Justice Reese concurs.

The second assignment as presented in the brief embodies original numbers 3, 4 and 5. Number 3 complains of the refusal of the trial court to grant a new trial on the ground that the evidence shows that if the draw-head was in the condition described by Skinner it was or ought to have been seen by plaintiff and therefore he assumed the risk of its use. Under 4 and 5 it is asserted that the overwhelming preponderance of the evidence shows that the draw-head was not out of repair in the respect complained of, and therefore the accident was due to some other cause.

In disposing of No. 3, supra, it must be admitted that in view of Skinner's description of the condition of the drawhead it is remarkable that it was not seen by plaintiff when he first arranged the knuckle, but again we are confronted with the difficulty due to the utter absence from the record of any detailed description of the construction of a drawhead, or any evidence as to whether the defect was open to the casual glance of one busily engaged in work or was obstructed by other parts of the apparatus. It is true Skinner says he had but to look and see the defects he describes, but he went to look for defects. The plaintiff swears he did not see them. Whether he ought to have seen was a question for the jury under the facts and they have determined the issue in his favor upon what appears to be sufficient evidence.

Nos. 4 and 5 are overruled because in our opinion the question of credibility under the facts of this case is solely for the jury, and we do not feel authorized to disturb their conclusion.

The sixth assignment was disposed of with what was said by us in regard to the first.

Counsel for appellee in his opening argument used the following language:

"It is the universal custom and practice of brakemen and switchmen to use their feet to shove these drawheads in place in order to make the cars couple as they are coming together, and has always been the practice, as shown by the evidence in this case, and the officers of the railroad company knew it, and have always known it, and this rule, pleaded by them in defense of this case, was never intended to prevent the practice of using the feet in making couplings, but this rule was made for the sole and only purpose to defend law suits with." The language was excepted to and the court has allowed the bill without qualification and the matter is here presented as error. As stated before, there was ample evidence that the rule was not regarded and had never been enforced. It was contended by plaintiff, and he sought to prove it, that the company did not expect the rule to be observed as it seriously retarded the work. If it is true the rule was made and never enforced; that the company's interests induced it to wink at its violation, or else to require it, we can not say that counsel was indulging in an impossible inference when he said the rule was made for use in defending litigation. In the very nature of things when it comes to argument the field of inference from a given or assumed state of facts is large. If the inference is not fair the jury ought not to sustain it. but that the

inference contended for is not the most probable or is even improbable does not forbid the contention. The assignment can not be sustained.

The language of other counsel for appellee in the closing argument, as set out in the sixth assignment, was a distinct and reprehensible violation of the proprieties of debate and the rules designed to govern arguments of causes before juries. It received, however, not only the prompt reprimand of the trial court, but counsel also withdrew it and the court distinctly instructed the jury not to consider it or be influenced by it. Ordinarily this is regarded as a sufficient correction of the error and we so regard it under the facts of this case.

The ninth assignment is addressed to the paragraph of the court's main charge in which the jury are instructed that "the burden of proof is on the defendant in this case, to prove by a preponderance of the evidence that the plaintiff was guilty of contributory negligence, unless the evidence of the plaintiff, or his own witnesses, shows him guilty of contributory negligence, in which event your verdict should be in favor of the defendant." The ground of objection as disclosed by the proposition is that it erroneously leaves to the jury to determine where the burden rests. The rule is that the burden of establishing that defense is upon the defendant, except where the plaintiff's evidence convicts him *prima facie* of contributory negligence. (Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 152; Texas & Pac. Ry. v. Reed, 88 Texas, 439; Gulf, C. & S. F. Ry. v. Howard, 96 Texas, 585) in which event he of course must adduce proof explaining or excusing his apparent fault. The charge complained of is not an accurate statement of the law, but it is not open to the objection urged against it. The jury is clearly told that the burden is upon defendant except in the event the defense is established by plaintiff's evidence. The assignment is without merit.

The court used the same language as to the defense of assumed risk, and the point here made against it is that under the facts and pleadings the burden was on the plaintiff. We are of opinion the plaintiff's proof did not establish as matter of law either negligence on his part or the assumption of risk. At most, it standing alone made an issue for the jury.

The further point is made against the verdict that the plaintiff ought in no event to recover, because the cars which are alleged to have been defective were neither in the possession nor control of defendant nor intended to be incorporated in defendant's train, hence there was no duty to inspect and repair. It is the rule in this State that the master's duty of inspection should extend to foreign cars as well as its own whenever the necessities of the master require that the servant shall handle foreign cars. It seems to us the rule is as it should be. The same reason existed in this case for the application of the rule as if the car which caused the accident had been destined for incorporation in defendant's train. When plaintiff arrived at Nacogdoches he had no means of knowing how long those cars had been at that point, or that they were not in the custody of defendant. The duty to the servant would have been discharged had the defendant inspected with reasonable care and warned the plaintiff of defects thus discovered; but it is not the law that defendant owed plaintiff no duty as to the cars in question. Houston & T. C. Ry. v. Milam, 58 S. W. Rep., 737; Southern

Pac. Ry. v. Winton, 66 S. W. Rep., 481; Missouri Pac. Ry. v. White, 76 Texas, 103.) The assignments addressed both to the proposition of law embodied in the charge upon this question, and the law applicable to the facts proved, are overruled.

We are of opinion the evidence sustains the verdict on the issue of liability.

The verdict is assailed as excessive. The immediate consequence of the accident was the crushing of plaintiff's foot and ankle which was of course attended with great pain. The physician undertook to save the member and avoid amputation. This effort covered several months, during which the plaintiff suffered continually and intensely. Amputation finally became necessary and the leg was cut off about seven inches below the knee so that plaintiff's permanent injury consists of the loss of that part of his limb. The stump had not entirely healed at the date of the trial and his artificial limb then caused him some pain. Plaintiff was 30 years of age when he was injured, was in good health and earning from $80 to $100 a month. While the injury is serious and the suffering was great, still we think the amount awarded was much too large. So much so as to lead to the conclusion that the jury in fixing the same were influenced by some improper motive. It has therefore been ordered that unless the plaintiff shall within twenty days remit $5,000 of the judgment it shall be reversed and the cause remanded upon this assignment. The facts of this case easily distinguish it from the Tolliver case, 11 Texas Ct. Rep., 632, in which the plaintiff was younger, the injury more serious, and the loss in decreased earnings much greater.

The other assignments have been carefully examined and have been found to be without merit. They are overruled without detailed discussion.

*Affirmed.*

Writ of error refused.