## El Paso Electric Railway Company v. I. Alderete.

### Decided May 18, 1904.

**1.—Passenger—Ejectment—Folded Transfer.**

A passenger did not forfeit his right to remain on a street car by refusing, upon the conductor's demand, to unfold a transfer tendered by him or in refusing to pay fare again. Evidence held to show no improper conduct nor profane language on the part of a passenger ejected for such refusal.

**2.—Contributory Misconduct—Burden of Proof—Requested Charge.**

A requested charge designed to correct alleged error in the main charge in placing the burden of proving contributory misconduct on defendant, in an action for damages for ejectment of a passenger from a street car, was properly refused, the burden being in fact on defendant, it would seem, the same as contributory negligence.

**3.—Charge—Burden of Proof—Preponderance of Evidence.**

A charge making it a condition of plaintiff's recovery that he "prove by a preponderance of the evidence the truth of the facts alleged by him and you will decide the issues submitted to you in this charge upon a preponderance of the evidence," was not objectionable as requiring the jury to decide all issues submitted to them upon a preponderance of the evidence.

**4.—Defective Assignment of Error—Proposition.**

An assignment of error not accompanied by a proposition of law will not be considered.

### ON MOTION FOR REHEARING.

**5.—Requested Charge—Correcting Error in Main Charge.**

A requested charge designed to correct alleged error in the main charge can not be considered where there is no assignment of error directed to the alleged error.

Appeal from the District Court of El Paso.   Tried below before Hon. A. M. Walthall.

*Clark, Hawkins & Franklin,* for appellant.

*W. M. Stanton,* for appellee.

JAMES, Chief Justice.—The action is by appellee for damages for being ejected from a street car.

The first, second, third and fifth assignments of error complain, in effect, that the undisputed evidence showed that plaintiff's own misconduct was the cause of his being ejected, and that the conductor was justified in ordering or putting him off.

The propositions under these assignments are copied:

"(1)   The evidence was undisputed that the plaintiff's profanity and misconduct proximately contributed to cause any injury he may have sustained.

"(2)   The uncontradicted evidence shows that the plaintiff's own misconduct was the proximate cause of his being ejected from said car.

"(3)   The plaintiff's insolent manner in shoving the paper in the face of the conductor, his profane refusal to unfold the paper, his refusal

to pay his fare or present a transfer, justified the conductor in putting or ordering him off the car.

"(4)   The evidence is undisputed, and from it no two minds of ordinary intelligence could differ, in the inference or conclusion that the plaintiff's want of care and prudence amounting to positive misconduct was prompted by a motive on his part to be ejected or ordered from said car, that he might sue defendant as he has done in this case.

"(5)   The undisputed evidence shows that the car was crowded, and that the conduct of plaintiff in declining with an oath the courteous request of the conductor to unfold the paper and disclose that he had a transfer entitling him to ride, was negligence on the part of plaintiff, and that such negligence or misconduct proximately contributed to cause whatever injury, if any, or humiliation the plaintiff complained of."

These assignments must be disposed of from the testimony, which was conflicting.   The following were the facts, if the jury believed plaintiff, and this they appear to have done:   He had taken a car at Washington Park, paid his fare, and at the Sheldon Hotel got a transfer to go to Juarez.   He was in a trailer.   When the conductor came to him he went into his vest where he had the transfer ticket and handed it to him.   The conductor said, "Unfold it."   He said, "No, I won't unfold it."   The conductor then said, "If you wont unfold it give me a nickel."   Plaintiff testified:   "He just chucked it at my face, and it hit me right on my chin and it fell in my lap.   *   *   *   After it fell on my lap he rung the bell, put one hand on my collar, the other on my arm, and gave me a jerk; the car stopped all of a sudden this way, then he gave me a jerk and this foot fell this way on the floor.   As the car stopped I fell against the handle of the car right on my back.   I went then down to the ground; yes sir.   It was all I could do to keep from falling on my face.   *   *   *   Judge Falvey stood ahead of me on the rear of the front car.   I said, 'Judge, see this man threw me off; I have got a transfer.'   This man was pretty excited; he said 'Get back on the car.'   I said, 'No, I wont get back.   I will take the next car.'   I was afraid of him; he was pretty excited,—mad.   I could see his lips tremble this way.   I first noticed that expression on his face when I first told him I would not unfold the ticket.   I think it may have been rolled over twice this way.   I handed it over to him this way.   It was not rolled like a cigarette.   When I said I would not give him a nickel he just grabbed me this way and the car stopped at the same time he gave me the jerk.   I certainly was humiliated; car full of people.   *   *   *.   I was not prepared to make a fight.   I did not know him.   Had not seen him before.   I had a pain in my back for a good many days.   I went to see Dr. Bush about it.   I guess I had a pain in my back three or four days.   Still if I sat down in a chair without stirring a little bit, I have a pain in my back at the place where I was hurt.   *   *   *   I was sitting this way; he was standing out here; grabbed me in this way; put one of his hands right on my collar, the other one on my arm; he gave me a jerk; as he gave me a jerk the car stopped suddenly at the same

time, and I fell against that handle right on my back. I was still on the car. I fell off the car at the same time. I did not fall on my face; I fell on my feet. I am willing to say to this jury that he threw me off the car."

He testified further on cross-examination also that he was not under the influence of liquor. That when the conductor approached him he said "Fare." "I went into my pocket and pulled out the transfer. This is the transfer. It was folded up as it is now. He asked me to unfold it. I said it was a transfer. He said unfold it. That was the second time he asked me. I said 'Damned if I am going to unfold it; unfold it yourself.' He said, 'Give me a nickel;' he put his hand in my face this way and threw it right back at me. I put it in his hand and he threw it right back at me. * * * When I called to Judge Falvey I had in mind a suit against the company. * * * I said a while ago I would not get back on because I was afraid of him. He was pretty excited. It all happened in a minute's time."

Another witness testified that when the conductor got to where Alderete was they had some words, and that the conductor got him by the neck and by the coat and threw him down on the ground.

Dr. Bush testified that he examined plaintiff's back and found a bruise at the lower part of the spinal column as big as a silver dollar, perhaps larger. It could have been caused by being thrown against the end of a car seat. Plaintiff testified that it was the next day after the occurrence that he went to Dr. Bush.

In reference to the testimony of Mrs. Smith, a witness for defendant, plaintiff testified: "I called on this colored woman that testified here, Mrs. Smith. I had a conversation with her. She told me—up to that time I understood by her testimony up to yesterday I had her subpoenaed up here—she told me there was two people between us, and said, 'I could not see what was going on, only that I saw the conductor had his hand on the back of your neck.' That is just exactly what she told me; says, 'I could not see very well because there were two other people between us.' She just said it was an outrage."

All of said assignments allege that the testimony was such that under certain charges given by the court the jury should have found in favor of defendant. The charges themselves are not questioned.

According to the above evidence some of the facts stated in the propositions advanced did not occur. There was no profanity used by plaintiff. If he formed the intention to sue defendant after he was ejected, as could be found from the testimony, then it was not a fact that what he did in the car was done with a motive or desire to be evicted in order that he might sue.

We think that it sufficiently appears from the above testimony that plaintiff did not forfeit his right to remain on the car by what he did. He was a passenger, had his transfer, and tendered it to the conductor when the latter requested his fare. The conductor had no right to reject the transfer, and refuse to examine it, because it was folded. The jury

heard plaintiff's statement as to how the ticket was folded, and saw the very ticket as plaintiff said it was folded, and probably concluded that the conductor's act in demanding that plaintiff hand it to him unfolded was frivolous, arbitrary and unreasonable. It might as well be held that if he had tendered a dollar bill folded the conductor could have refused it, and put him off if he did not unfold it. We think plaintiff was not guilty of improper conduct by which he forfeited his rights as a passenger by refusing to comply with the conductor's arbitrary demand, even though in doing so he made use of the emphatic language shown. The expression was neither obscene nor profane; and it did not constitute disorderly conduct justifying his eviction, especially where the jury may, with much propriety, have considered that it was the natural result of provocation offered by defendant's own officer.

The following charge was refused and its refusal complained of by the sixth assignment: "You are charged that if you believe from the evidence that the misconduct of the plaintiff, if any, caused or proximately contributed to cause his injuries, if any, then you are charged to return a verdict for the defendant." Appellant's proposition is that this instruction "would have cured the error on the seventh paragraph of the court's charge in placing the burden of proof on defendant, said seventh paragraph stating, 'You are instructed that if you believe from the preponderance of the evidence that the conductor on defendant's car politely requested defendant to pay his fare,' etc." The requested charge was designed as a submission of contributory misconduct on the part of plaintiff, and it would seem that the burden of proof on such an issue would be on defendant the same as contributory negligence. However, we fail to perceive that the requested instruction would have been understood by the jury as having reference to or as qualifying said paragraph in respect to the burden of proof, if the latter could be taken as placing the burden of proof on defendant.

The eighth assignment complains of the eighth paragraph of the charge: "The burden of proof in this case is on the plaintiff, and before he is entitled to recover he must prove by a preponderance of the evidence the truth of the facts alleged by him and you will decide the issues submitted to you in this charge upon a preponderance of the evidence." The proposition is that it was erroneous and calculated to mislead the jury to tell them that they should decide all issues submitted to them upon a preponderance of the evidence. There was no error in the instruction. The jury were simply told to determine all matters of fact according to the preponderance of the evidence. The latter part of said instruction did not place the burden of proof on any one, but tells the jury to arrive at the facts from the preponderance of the evidence with reference thereto. The first part placed the burden upon plaintiff as to all his allegations, and of this defendant does not and certainly can not complain.

The seventh assignment is not accompanied by a proposition of law and therefore we do not consider it.

36 Civ.—10

The tenth is that as plaintiff sustained no physical injuries and suffered no humiliation, the verdict is so grossly excessive as to shock the conscience of honest men. This assignment does not accord with the evidence. The verdict is not excessive.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

The motion relates to what the court says in reference to the sixth assignment of error. The refused charge is as set forth in the opinion. The point insisted on is that "the requested instruction would have cured the error in the seventh paragraph of the charge in placing the burden of proof in defendant." As we have stated, the requested instruction as framed would not have directed the minds of the jury to the alleged feature of the charge, so as to have the effect of qualifying it. Nor is there any assignment which questions that paragraph of the court's charge in any respect. If there is error in that paragraph in placing the burden on defendant, by requiring certain facts to be found by the preponderance of evidence in order to warrant a verdict for defendant, it is not presented by an assignment of error directed to that paragraph, and the request was not so framed as to have the effect of relieving the charge of such error.

The motion is overruled.

*Overruled.*

Writ of error refused.