## JENKINS v. MOORE et ux.    (No. 1217.)

(Court of Civil Appeals of Texas. El Paso. April 21, 1921. Rehearing Denied May 12, 1921.)

1. Trial ⬅︎344—Findings not subject to impeachment by testimony of jurors.

In a suit to set aside a sheriff's sale under foreclosure of a vendor's lien against one who had taken title for the accommodation of plaintiffs, and conveyed to them, it being claimed that the purchaser had bid in the property in violation of an agreement with plaintiffs and pursuant to a conspiracy, findings of such a fraudulent conspiracy could not be impeached by testimony of jurors that they had so found in order to answer another issue as to whether defendant had agreed not to bid in the affirmative.

2. Trial ⬅︎205—Failure to instruct on plaintiffs' burden to show affirmative of issues held error.

In a suit to set aside a sheriff's sale on foreclosure of a vendor's lien on the ground that the purchaser had bid in the property in violation of an agreement with plaintiffs, the burden was on plaintiffs to show such agreement and a fraudulent conspiracy to stifle bidding, and failure to so instruct on proper request was reversible error.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by W. S. Moore and wife against J. V. Jenkins. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Lea, McGrady, Thomason & Edwards (on appeal), of El Paso, R. L. Rust, of Eastland, Black & Smedley, of Austin, and W. O. Davis, of Gainesville, for appellant.

Stuart, Bell & Moore, of Gainesville, for appellees.

HIGGINS, J. This suit was brought by the appellees, W. S. Moore and his wife, R. G. Moore, against the appellant, J. V. Jenkins, to set aside a sheriff's sale to Jenkins of 320 acres of land in Eastland county, and to recover the land; the same having been sold under a judgment rendered July 19, 1911, foreclosing a vendor's lien on the land in favor of Claude McCauley against said J. V. Jenkins, H. M. Payne, W. E. Oglesby, W. S. Moore, and R. G. Moore.

This is the second appeal in the case. See opinion of Court of Civil Appeals reported in 168 S. W. 398, and of Supreme Court in 109 Tex. 461, 211 S. W. 975.

By deed dated October 10, 1910, Oglesby and wife conveyed the land to Jenkins, the latter assuming the payment of seven purchase-money notes with which the land was incumbered executed by H. M. Payne and wife to A. M. Reed and wife. In this transaction Jenkins acted for the accommodation of W. S. Moore and at the latter's request. Jenkins was to get nothing out of the transaction, and was not expected by the Moores to pay the notes.

By deed dated October 15, 1910, Jenkins conveyed the land to Mrs. R. G. Moore as her separate property, and she assumed the payment of said notes.

Some time prior to May 11, 1911, McCauley, having become the owner of said notes, filed suit thereon in Eastland county, and on July 10, 1911, recovered judgment against Payne, Oglesby, Jenkins, and W. S. and R. G. Moore for the amount due upon the notes with foreclosure of lien. Hon. R. L. Rust was the attorney for McCauley in this suit.

On June 7, 1912, McCauley, in consideration of $1,462.60 cash, executed unto Jenkins a written transfer of the judgment.

On May 27, 1912, an alias order of sale was issued upon the judgment, and the land was sold thereunder to Jenkins upon a bid of $100.

This suit was instituted by W. S. Moore and wife on July 15, 1912. The amended petition upon which the last trial was had was filed on April 6, 1920. The petition is lengthy. It was alleged in substance that while Jenkins was the owner and transferee of the judgment it was agreed between him and appellee W. S. Moore that upon the foreclosure sale the latter would refrain from bidding, and Jenkins would release the Moores from personal liability upon the judgment, but that upon the day of the sale Jenkins repudiated the agreement, expressing a determination to buy the land as cheaply as possible and enforce the balance of the judgment against the Moores, such repudiation occurring when it was too late for the Moores, though they exercised due diligence, to protect themselves by bidding for the land, and as a result the land was purchased by Jenkins for the grossly inadequate price of $100, and these allegations are supported by the testimony of W. S. Moore.

It was further alleged that Rust, Jenkins, and O. Allen, the latter being the agent of

Jenkins and who represented him at the foreclosure sale, conspired together to prevent competitive bidding upon the land whereby the land was sold to Jenkins for said inadequate price.

In our opinion there is no evidence whatever to connect Judge Rust with such a conspiracy or to show that his conduct was in any manner subject to criticism. However, the testimony of W. S. Moore is sufficient to support the allegations as to Jenkins and Allen.

The defendant, Jenkins, pleaded a general denial, and by special answer set up that the Moores had no interest in the land, having conveyed the same to J. L. Wade shortly after McCauley filed his foreclosure suit and prior to the foreclosure sale, Wade assuming the payment of the purchase-money notes held by McCauley; that since such conveyance to Wade the Moores have no interest in the land, and the only matter in which they are concerned is to be released from personal liability on the judgment, and this release the defendant tendered.

The case was submitted upon special issues. The issues, answers, and court's charge are as follows:

"Question No. 1: Prior to the execution sale on July 2, 1912, did W. S. Moore have an agreement with J. V. Jenkins to the effect that, if said Moore would not bid on the property, said Jenkins would bid in the property in controversy at the sale and would release the plaintiffs from liability on the judgment? Answer: Yes.

"Question No. 2: Did J. L. Wade accept the deed executed to him by W. S. Moore and wife covering the land in controversy? Answer: No.

"Question No. 3: What was the fair and reasonable market value of the land described in plaintiffs' petition, to wit, the 320 acres, on the 2d day of July, 1912, the date of the sheriff's sale? Answer: $6.50 per acre.

"Question No. 4: Was or not the $100 purchase price at the sheriff's sale a grossly inadequate price for said land? Answer: Yes.

"Question No. 5: Did R. L. Rust, O. Allen, and J. V. Jenkins enter into a conspiracy by which said Rust should fraudulently and secretly represent said Jenkins, and prevent competitive bidding at the sale of the land in question by the sheriff of Eastland county? Answer 'Yes' or 'No.' Answer: Yes.

"In a civil action the burden of proof is on the plaintiff to prove the material allegations in his petition contained, and, unless you so find, you will find for the defendant."

Judgment was rendered in favor of the Moores setting aside the sheriff's sale and for the recovery of the land.

The assignments will not be considered in the order presented in the brief.

[1] The seventh and eighth assignments undertake to impeach the answer to special issue No. 5 by the testimony of some of the jurors presented upon the motion for new trial to the effect that the jury did not intend to find that Judge Rust had been party to a conspiracy, but they had answered issue 5 in the affirmative, because the jury thought they must so answer in order to answer issue 1 in the affirmative. Findings of a jury cannot be impeached in this manner. Crosby v. Stevens, 184 S. W. 712. The matter presents no error.

The ninth and tenth assignments complain of the refusal of a new trial upon the ground of newly discovered evidence of E. I. Hill and O. Allen. This is a matter which in large measure is vested in the discretion of the trial court, and it is not apparent that this discretion has been improperly exercised.

The fifth assignment complains of the court's charge upon the burden of proof upon the ground that it was inapplicable to the special issues submitted, ambiguous, and calculated to mislead and confuse the jury.

The sixth complains of the refusal of appellant's request to specifically instruct the jury that the burden of proof rested upon appellees to prove the affirmative of issues 1 and 5. The charge given by the court simply instructed the jury that the burden was upon the plaintiffs to establish the material allegations of their petition, and, unless they so found, the jury would find for the defendant.

[2] This case was submitted upon special issues; and the jury was not called upon to find a general verdict for or against either party. They were to find upon the specific issues of fact submitted to them. The charge given was inapplicable to the case as submitted, and, appellant having duly objected thereto, and having requested a proper charge, the court should have heeded the objection and given the charge. The rule as to the burden of proof is important. Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593. The appellant did everything he could to get the court to place the same fairly and clearly upon the appellees as to issues 1 and 5, upon whom it rested, and the failure of the court so to do presents reversible error. Ins. Co. v. Westmoreland, 215 S. W. 471; Wichita Falls, etc., v. State, 80 Tex. 684, 16 S. W. 649; Sanger v. Bank, 170 S. W. 1087; Texas, etc., v. Patton, 145 S. W. 1063.

The third assignment complains of the refusal of a special issue reading:

"Did W. S. Moore and his wife, R. G. Moore, about February, 1911, by deed convey the 320 acres of land in controversy to one J. L. Wade?"

Whether the Moores had parted with their title to the land depended upon whether J. L. Wade accepted a deed which had been signed and acknowledged by the Moores. It was the contention of appellees that the deed was not accepted by Wade, and this phase was sufficiently covered by question No. 2 in the court's charge.

By the first proposition under the first assignment the appellant contends that a per-

emptory instruction in his favor should have been given because of the execution and tender to the plaintiffs upon the trial of a full and complete release of the judgment in favor of McCauley whereby the agreement alleged by the plaintiffs was fully performed. The Supreme Court, upon a former appeal of this case, held that, if there was an express and unconditional renunciation by Jenkins of his contract with the Moores, such renunciation entitled the Moores to treat the entire contract as terminated, and, if the wrongful conduct of Jenkins prevented Moore from bidding at the sheriff's sale and enabled Jenkins to acquire the land at an inadequate price, his title cannot be sustained against direct attack by the Moores. This ruling of the Supreme Court forecloses the proposition thus advanced by the appellant against him. By a second proposition under the first assignment and under the second and third assignments it is contended that a recovery cannot be had because it appears that the Moores had parted with all interest in the land by conveying the same to J. L. Wade. This phase of the case is not discussed in the opinion of the Supreme Court, but the appellees have filed a certified copy of the motion for rehearing filed by Jenkins in the Supreme Court upon the former appeal. In this motion the attention of the Supreme Court was specifically and directly called to the fact that the record disclosed that the Moores had sold and conveyed the land before the rendition of the foreclosure judgment, and therefore had no such interest in the land as would authorize them to bring a suit to set aside the sale. Although this matter was thus called to the attention of the Supreme Court, it did not see fit to change its ruling. We must assume, therefore, that in the opinion of the Supreme Court the fact of a conveyance by the Moores of their interest in the land does not bar their right of action.

The views expressed dispose of all errors assigned, all of which are overruled except the fifth and sixth.

Reversed and remanded.