ROGERS et al. v. ILSENG et al.   (No. 10396.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 27, 1923.)

1. Trial ⬳355(2)—Sum found by jury held not to mean such amount per acre.

Where sums found by a jury, $25 and $75, were in response to inquiries as to the value of each of two leases as a whole and not by acre, the sums found by them could not be construed to mean such sums per acre.

2. Trial ⬳355(2)—Answer to special issues held too indefinite to support recovery.

Where in response to inquiries, the jury found the value of a new lease was $75, and that the difference in value between that lease and the first one was $25, such findings could not form a basis for recovery on the new lease, because the jury did not state which lease was the more valuable.

3. New trial ⬳143(4)—Verdict held not impeachable by affidavits of jurors as to misunderstanding of facts.

Refusal to grant motion for new trial based on alleged misunderstanding of jurors that they did not know plaintiff had testified as to a certain matter, and that, if the court stenographer, whom the court permitted by agreement of parties to go to the jury room to read certain testimony, had read that part of the evidence to them, the verdict would have been different, held proper, as the jurors could not impeach their verdict.

4. New trial ⬳143(4)—Denial of new trial urged on ground that jurors misunderstood testimony not abuse of discretion.

On motion for a new trial based on alleged misunderstanding of evidence by certain jurors, refusal to permit a juror to testify in response to plaintiffs' questions that, if the court stenographer, who was permitted by agreement of parties to go in jury room to read testimony, had read plaintiffs' testimony with reference to a certain matter, the verdict would have been different, held not an abuse of discretion, where that part of plaintiffs' testimony was flatly contradicted.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Appeal and error ⬚══994(3)—Credibility of witnesses testifying on motion for new trial held for trial court.**

Credibility of the testimony of jurors as to their misunderstanding of certain evidence, and as to the action of the court stenographer in reading testimony to them, as well as the testimony of the stenographer, was for the trial judge on the hearing of a motion for new trial.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Suit by R. L. Rogers and others against A. G. Ilseng and others. From a decree granting partial relief, plaintiffs appeal. Affirmed.

R. B. Cousins, Jr., and Ritchie & Ranspot, both of Strawn, for appellants.

Penix, Miller & Perkins, of Mineral Wells, Capps, Cantey, Hanger & Short, E. A. McCord, and Alfred McKnight, all of Fort Worth, for appellees.

DUNKLIN, J. On December 19, 1917, R. L. Rogers and wife and W. M. Rea and wife executed to A. G. Ilseng an oil and gas lease upon 1,051 acres of land for a cash consideration to them paid of $1,576.50. By the terms of the lease it was provided that, if no well was begun on the land on or before June 19, 1918, the lease would terminate, unless the lessee would pay to the lessors the sum of $262.25 for the privilege of a three-months extension. It was further provided that successive extensions for the same period would be effected for the same consideration.

On December 9, 1918, while the lease was still in force, a new lease was executed by the lessors to Ilseng, covering 82 acres of the same land described in the original lease. It was stipulated in the second lease that the same should continue in force for a period of three years from its date, and as long thereafter as oil and gas should be produced from the land. It was further stipulated that, if no well should be commenced on that land on or before the 9th day of December, 1919, the lease should terminate, unless the lessee, on or before that date, should pay to the lessors $82, which payment should operate as a rental, and cover the privilege of deferring the commencement of a well for 12 months from that date, and that in like manner and upon a like payment the commencement of a well might be further deferred for like periods of the same number of months successively.

The lease recited a cash consideration paid to the lessor of $164, and contained this further stipulation:

"It is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred."

The second lease was duly assigned by Ilseng to Brown Harwood.

Rogers and Rea, the lessors, instituted this suit against Ilseng, Luther T. Mann, and Brown Harwood. The suit against Ilseng and Mann was to recover a personal judgment for $8,610, which was alleged to be the price which Ilseng and Mann, through their agent and representative P. B. Hopkins, agreed to pay for the lease at the time it was given to Ilseng, it being further alleged that Hopkins was associated with Ilseng and Mann, and that the lease was acquired for their joint benefit.

In an alternative pleading, plaintiffs alleged that, if they were mistaken in their contention that the lease was made to Ilseng for the agreed consideration alleged, yet they were entitled to recover the reasonable value thereof, to wit, the sum of $8,200. Plaintiffs further prayed for a cancellation of the lease as against all the defendants.

Upon the trial judgment was rendered decreeing a cancellation of the lease as against all the defendants, but denying plaintiffs any recovery of a personal judgment against either Ilseng or Mann, and from that portion of the judgment plaintiffs have appealed. The evidence shows without controversy that P. B. Hopkins acted for himself and Ilseng and Mann in procuring the execution of the lease sought to be canceled, and that plaintiff Rogers acted for himself and his coplaintiff Rea in those negotiations.

The following were special issues submitted to the jury with their findings thereon:

"Special Issue No. 1. Were the defendants Ilseng and Judge Hopkins associated in taking, procuring, and executing of new lease or leases dated the 9th day of December, 1918, which is in evidence? Ans. Yes.

"Special issue No. 2. Was it the understanding and agreement between the plaintiff Rogers and Judge Hopkins before or at the time of the execution of the new lease on 82 acres of land that the plaintiffs would be paid or remunerated by defendants for the execution and delivery of said leases? Ans. No.

"Special Issue No. 3. What sum of money, if anything, do you find to be the market value of the new lease or the mineral rights leased thereunder on the 9th day of December, A. D. 1918? Ans. $75.

"Special Issue No. 4. What sum of money do you find, if any sum, to be the difference between the value of the old lease and new lease or the mineral rights conveyed under each, on the 9th day of December, 1918, on the 82 acres of land described in the new lease? Ans. $25."

[1, 2] Appellants have not challenged those findings of the jury, but they insist that, in the absence of any express contract on the

---

part of the defendants to pay a consideration for the lease, they would be entitled to recover its value upon an implied agreement that defendants would pay the same. And in that connection it is insisted that the difference between the value of the old lease on the 82 acres and the value of the new lease, which the jury found to be $25, would be the measure of the plaintiffs' recovery. Appellants construed the sums found by the jury, to wit, $75 and $25, in answer to issues 3 and 4, to mean those sums per acre. But we know of no authority for giving those findings that construction, since the findings were in answer to inquiries as to the values of the leases as a whole and not by the acre.

A further fatal objection to the adoption of those findings as a basis for a recovery of the value of the new lease is that, while in answer to issue four the jury found the difference between the value of the old lease and the new lease to be $25, they did not state which of those leases was the more valuable. It may be further noted that the evidence shows when the new lease was executed the old lease, for which Ilseng had paid at the rate of approximately $2 an acre, was still in force, and that the new lease was executed with the expectation on the part of both parties thereto to realize increased benefits.

[3, 4] Several assignments which are urged here by appellants relate to the failure of the trial court to grant plaintiffs a new trial by reason of facts developed upon a hearing of plaintiffs' motion for new trial, which may be briefly summarized as follows: After the jury had retired and after deliberating upon their verdict, they returned into court and requested certain testimony of Mr. Rogers touching the time the demand was made by him for the amount sued for. Counsel for both sides then agreed that the stenographer should go into the jury room and read the testimony of Mr. Rogers to the jury, or as much of it as they desired. Mr. Ward, the official court stenographer, retired with the jury into their room, and, after returning into court, he informed plaintiffs' counsel and the court what he had read to the jury. Counsel for plaintiffs then requested the court that the stenographer be sent back to the jury room with instructions to read all the testimony of Mr. Rogers touching the subject. The court declined to do so on the ground that Mr. Ward had already read all the jury had requested, and that the jury had been satisfied, and that the court did not feel that he had authority to order the stenographer back to the jury room without a further request from the jury that that be done. The stenographer testified in part as follows:

"The foreman asked me what Mr. Rogers testified with reference to when he demanded from Hopkins or Ilseng the payment of this money. I read therefrom my notes exactly what Mr. Rogers had testified to on this point. They made no further request of me. I complied with every request of the foreman or any juror as to the testimony of Rogers that they desired to hear."

He further testified that he read the statement made by Rogers that it was probably a year after the contract was made before he made demand of payment of this amount on Ilseng; that his notes did not at that point state that it was a year before he made a demand on Hopkins. He further testified:

"My reading to the jury made no mention of any subsequent conversation had between Rogers and Hopkins. After I had read that one statement the foreman of the jury, or some member of the jury, said that that was all they wanted."

L. D. Shive, one of the jurors, introduced as a witness for the plaintiffs, testified in part as follows relative to that portion of Rogers' testimony the jury desired to have repeated:

"We wanted to know what time it was after this contract was made that Mr. Rogers had made a demand for his part of this money. We did not specify any particular testimony but asked for Mr. Rogers' testimony touching on the matter. The stenographer then went into the jury room with us. He read that it had been something like a year after until he asked for this compensation. We understood that the demand was made of Ilseng. No testimony was read with reference to demands that had been made by Rogers of Hopkins for payment of that amount. I gave great weight to the testimony he read that it was a year and a half after that the demand was made on Ilseng. This was the biggest point I was deliberating on. The question of when demand was made for payment of the money was discussed by the jury in their deliberations. We were not able to recall clearly when demand had been made; that was the reason we made the request for that testimony. * * * I was on the jury. I heard all of the testimony. The jury came in with a request in writing, and that request was in substance that we wanted to know when Rogers made demand on Hopkins for payment of the money. I don't think we said Ilseng. I would not say positive that, that wasn't what we said. The stenographer read to the jury what Mr. Rogers had testified relative to the demand on Mr. Ilseng for payment, but they wanted Mr. Rogers' testimony to Hopkins. The foreman asked the stenographer to read it to us. We asked him to read Rogers' testimony demanding his compensation from Ilseng, and he read it to us. He read what the foreman of the jury requested. He read what the other jurors requested. We understood it at that time to be from Hopkins. He read to us what we asked of him as far as we know."

Couch Anderson, another juror, testified:

"I was one of the jurors that sat in the case of Rogers v. Ilseng. I remember a request being made to have certain testimony read

to us in that case. I think the jury were influenced altogether by the question as to the testimony relative to when Rogers made demand on Ilseng. We wanted to know how long it was before Rogers made demand on Hopkins, how long after the contract before Rogers made demand on him for payment. The stenographer went back with us. I think he read the testimony to the effect that Ilseng said that he had not made any demands for a year, or over a year. That was all the stenographer read to us. I thought it was mighty strange that a man owed another man $10,000 and didn't make any demand any sooner. The reading of that testimony determined my verdict in the matter. Had the stenographer read to me testimony to the effect that Rogers in frequent conversations with Hopkins, following the execution of the contract, had been promised payment by Hopkins, my verdict would have been divided in one-half; one half to Ilseng and one half to Rogers. In that event I would have found that Rogers was entitled to compensation. * * * What the stenographer read to us was Ilseng's testimony as to when Rogers made demand on Ilseng. We thought he was reading Rogers' testimony to us. I heard what he said. I heard every word that the stenographer said to me. I don't think he tried in any way to mislead us."

Plaintiff Rogers had testified that he had several conversations with Hopkins before anything was ever said to Ilseng and subsequently to the execution of the contract in which Hopkins had said to him that he still owed Rogers upon the contract and would pay him.

Appellants also complain by a bill of exception presented to the action of the court in refusing to allow the juror Shive to testify in answer to questions propounded to him by plaintiffs' counsel that, if the testimony of Rogers had been read to him that he, Rogers, had had repeated conversations with Hopkins after the execution of the lease, in which conversations Hopkins had admitted that he owed plaintiffs for the lease, the verdict of said jury would have been in plaintiffs' favor and in his opinion that the time Rogers made demand for payment for the lease was given great weight by the jury in arriving at their verdict.

The testimony of Rogers referred to above was flatly contradicted by the witness Hopkins, who also further testified that he did not at any time agree to pay any money consideration for the second lease.

We believe it to be the settled law of this state that a verdict of the jury cannot be impeached by affidavits of jurors as to what their understanding of the facts was, or on what grounds they rendered the verdict. To indulge such a practice would lead to endless confusion and uncertainty. Wills Point Bank v. Bates, 72 Tex. 137, 10 S. W. 348; Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605; Farrand v. H. & T. C. Ry. (Tex. Civ.

App.) 205 S. W. 845; Crosby v. Stevens (Tex. Civ. App.) 184 S. W. 705.

[5] Furthermore, it does not clearly appear from the testimony of the jurors offered as witnesses on the motion in connection with the testimony of the stenographer that the court abused his discretion in overruling the motion for new trial, he, the trial judge, being the judge of the credibility of those witnesses and of the weight of their testimony. H. & T. C. Ry. v. Gray, 105 Tex. 42, 143 S. W. 606; Texas Co. v. Earles. (Tex. Civ. App.) 164 S. W. 30; Freeman v. McElroy (Tex. Civ. App.) 149 S. W. 436; City of Fort Worth v. Charbonneau (Tex. Civ. App.) 166 S. W. 388.

For the reasons noted all assignments of error are overruled, and the judgment is affirmed.