## MOORE v. ORGAIN.    (No. 1960.) *

(Court of Civil Appeals of Texas. El Paso. Jan. 13, 1927. Rehearing Denied Feb. 3, 1927.)

1. **Appeal and error** &ExponentialE;216(1)—**Plaintiffs could not complain that testimony was not limited to impeachment purposes, where they did not so request at time of its admission, or later, by motion or charge.**

Plaintiffs could not complain that testimony of witness was not limited to purpose of impeaching their witness, where they had not requested that it be so limited at time of its admission, or later, by motion or charge.

2. **Alteration of instruments** &ExponentialE;27(2)—**Burden of proving alleged alteration, not apparent on face of contract, rested on defendant who pleaded it.**

Where alteration pleaded by defendant was not apparent on face of contract sued on, burden of proving alleged alteration rested on defendant.

3. **Alteration of instruments** &ExponentialE;25—**Sworn plea, in effect, admitting signature, but setting up material unauthorized alteration after signing, is not strictly plea of "non est factum."**

Sworn plea, which, in effect, admits signature on contract, but sets up material unauthorized alteration after signing, is not strictly a plea of "non est factum."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Non Est Factum.]

4. **Trial** &ExponentialE;205—**It is not always necessary to charge on burden of proof.**

It is not always necessary to charge on burden of proof on a contested issue of fact.

5. **Trial** &ExponentialE;352(1)—**Submission of issue, to be determined according to preponderance of evidence, was correct submission.**

Submission of issue, to be determined from a preponderance of evidence, was a correct submission and was not objectionable as placing burden of proof upon defendants, since it did not impose burden of proof upon either party.

6. **Trial** &ExponentialE;352(1)—**That issue or charge might have been more aptly drawn is not reversible.**

That issue or charge might have been more aptly drawn, of itself, was not reversible, where issue was fairly and sufficiently submitted.

---

**7. Trial ⚖══351(2)—Party, not satisfied with issue as drawn, should have requested, in writing, issue in form desired.**

Where plaintiffs were not satisfied with issue as drawn, they should have requested, in writing, an issue in form desired by them.

**8. New trial ⚖══143(2)—Foreman's testimony as to jury's agreeing to false verdict held merely attempt to impeach verdict.**

Where foreman testified that he and several other members of jury deliberately agreed to verdict which they believed to be contrary to true facts, his testimony simply impeached verity of verdict and it was not statutory misconduct but attempted impeachment.

**9. New trial ⚖══143(1)—Juror cannot impeach his verdict.**

A juror cannot impeach his verdict by affidavit or otherwise.

**10. New trial ⚖══143(2)—New trial was not warranted where testimony of juror did not show misconduct, as distinguished from impeachment of false verdict.**

Where testimony of juror showed that jurors had agreed to false verdict, and thus did not show misconduct, as distinguished from impeachment, trial court did not err in overruling this ground of motion for new trial.

**11. Appeal and error ⚖══1015(5)—Court of Civil Appeals was bound by trial court's finding of fact that ground on which plaintiffs sought to impeach verdict was not substantiated.**

Court of Civil Appeals was bound by trial court's finding of fact, on testimony of juror, that ground on which plaintiffs sought to impeach verdict of jury was not substantiated.

**12. New trial ⚖══144—Court was warranted in refusing to credit uncorroborated testimony of juror, who confessedly violated his oath as juror.**

Trial court was warranted in refusing to credit uncorroborated testimony of juror, who confessedly violated his oath as juror by returning verdict which he believed to be false.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by S. W. Moore, individually and as trustee for John G. Hayes and others, against J. C. Orgain. From a judgment for defendant, plaintiff appeals. Affirmed.

Whitaker & Peticolas and Jones, Hardie & Grambling, all of El Paso, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

HIGGINS, J. This suit was brought by S. W. Moore, for himself, and as trustee for John C. Hayes, R. B. Homan, J. Harry Henderson, B. L. Farrar, G. J. Casselberry, T. B. Henderson, John T. Muir, Ed. M. Whitaker, A. L. Hawley, and C. L. Ezell, against J. C. Orgain, one of the stockholders of the Border National Bank, who signed the reorganiza-tion agreement at the time the National Border Bank was incorporated. The plaintiff's petition alleges that on January 12, 1924, an agreement in writing was entered into between certain persons called organizers (who are substantially the same as the plaintiffs in the case) with the owners of more than two-thirds of the capital stock of the Border National Bank; that the defendant, Orgain, was the owner of 66 shares and signed said agreement. The agreement provided that the organizers should incorporate a new bank, to be known as the National Border Bank, and subscribe and pay for all of the stock; that all of the assets of the Border National Bank should be transferred to the new bank, which was to be called the National Border Bank, except $400,000 of negotiable paper, which should be retained by the Border National Bank. Each subscriber agreed that he would purchase from the organizers of the National Border Bank one-half as much stock in the new bank as he had in the Border National Bank, and that the $400,000 of assets so retained by the Border National Bank might be used as collateral by the organizers to secure the payment of any obligation they might enter into to obtain the money with which to pay for the capital stock in the National Border Bank. Each subscriber further agreed that if the sum realized from the $400,000 of assets so pledged as collateral should be sufficient to pay off the obligation entered into by the organizers, there should be no obligation against such subscriber who had contracted to purchase stock in the National Border Bank; but should said $400,000 of retained assets not realize the sum of $225,-000 (that being the amount borrowed by the organizers to incorporate the National Border Bank), then each subscriber should be obligated to pay such unpaid balance on the amount of the stock contracted to be purchased by him. (Note: This clause in the contract is called the deficit clause.) That the organizers borrowed $225,000 and executed a note for that sum to J. F. Robinson, who indorsed and delivered it to the Commerce Mining & Royalty Company, and there are general allegations that the organizers of the bank also executed a document, pledging said $400,000 as collateral to the Robinson note, and showing that the collateral was returned to the National Border Bank in trust for the Commerce Mining & Royalty Company to be collected for its account. It is alleged that said collaterals were, from time to time, sold and the proceeds applied to the note until it was paid down to about the sum of $91,000. It is alleged that the Commerce Mining & Royalty Company indorsed and delivered the note to C. M. Harvey and on the 6th day of June, 1925, the plaintiff herein and his beneficiaries purchased said note from C. M. Harvey and thereafter gave notice in writing, mailed to each subscriber, and sold the col-

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lateral at the courthouse door on the 1st day of September, 1925, for the sum of $3,000 to S. W. Moore, trustee; that on September 1, 1925, there was unpaid on said note the sum of $88,824, which is .395 of the total indebtedness on said note, and therefore Orgain was indebted to the plaintiff in the sum of $1,466.-40, being that per cent. of the value of his stock for which the suit was brought.

The original answer of Orgain was under oath. He denied that he executed the contract sued on, and further pleaded that his signature, on which it is sought to bind him, was made by him on a sheet of paper separate and apart from the contract to which it now purports to be attached, and when signed by him was attached to certain papers entirely distinct from the agreement sued on. Plaintiff filed a supplemental petition, and the defendant filed a supplemental answer. In that pleading he alleged that he did read and consider the contents and language of the papers attached to the sheet on which his signature now appears at the time he signed the same, and that the matter which he signed is not the matter to which the sheet of paper bearing his signature is now attached; that the action which subsequently has been followed by defendant with reference to the reorganization of said bank was pursuant to the agreement which he did sign, and not in conformity with the alleged agreement on which he is now sued.

The court submitted but one issue, later quoted, which was answered, "No."

Judgment was rendered for defendant.

The deficit clause is in the fifth paragraph of the contract appearing on the second page and reads:

"Fifth: It is agreed that if the sum realized from said $400,000 of assets shall be sufficient to pay off and discharge the $225,000 of obligations entered into by the organizers, then there shall be no obligation against the subscribers hereto who have contracted to purchase an amount of stock in the new bank equal to 50 per cent. of their stock in the old bank to pay anything further therefor, but the organizers will transfer their stock to them free of further charge; but any subscriber who has contracted to purchase an amount of stock in the new bank greater than 50 per cent. of his stock in the old bank shall remain obligated to pay the balance due thereon, as above indicated; *and should said $400,000 of assets not realize the sum of $225,000, then each subscriber hereto shall be obligated to pay such unpaid balance and amount of the stock contracted to be purchased by him.*" (Italics ours.)

The italicized portion is the deficit clause upon which the suit is based.

The signatures of a number of persons appear upon the second page. The third and fourth pages consist of signatures, Orgain's appearing upon the fourth. He was not one of those designated in the contract as an organizer of the new bank.

Orgain testified that when the contract was presented to him for his signature and was signed by him, it did not contain the deficit clause. The effect of his evidence is that, after he affixed his signature on the fourth page, there was an unauthorized alteration of the contract by the substitution, for the second page, of a page which contained the deficit clause.

The questions presented will be considered in their logical order, rather than in the order appearing in appellant's brief.

The testimony of the witness Price was admissible for the purpose of impeaching the plaintiff's witness Harvey. Johnson v. Brown, 51 Tex. 65; Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 961; Railway v. Jackson, 93 Tex. 262, 54 S. W. 1023; Bonner v. Mayfield, 82 Tex. 234, 18 S. W. 305; Railway v. Spann (Tex. Civ. App.) 173 S. W. 600.

[1] Appellant insists it should have been limited to that purpose. If they desired it to be so limited, it was their duty to so request at the time of its admission, or later, by motion or charge. This they did not do. They cannot complain that the trial court was not more vigilant in their behalf than they were for themselves. Shumard v. Johnson, 66 Tex. 72, 17 S. W. 398; Blum Milling Co. v. Moore-Seaver Grain Co. (Tex. Com. App.) 277 S. W. 78; Walker v. Brown, etc., 66 Tex. 556, 1 S. W. 797; Massie v. Hutchison, 110 Tex. 558, 222 S. W. 962.

[2] The alteration pleaded by the defendant is not apparent upon the face of the contract sued upon. The burden of proving the alleged alteration thus rested upon the defendant. Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889; Muckleroy v. Bethany, 27 Tex. 551; Wells v. Moore, 15 Tex. 521; Davis v. Crawford (Tex. Civ. App.) 53 S. W. 384; Kansas, etc., v. Coalson, 22 Tex. Civ. App. 64, 54 S. W. 389.

[3] A sworn plea, which, in effect, admits the signature but sets up a material unauthorized alteration after signing, is not strictly a plea of non est factum. Dewees v. Bluntzer, 70 Tex. 406, 7 S. W. 820; Kansas, etc., v. Coalson, supra.

But one issue was submitted, as follows:

"Question No. 1: Do you find from a preponderance of the evidence that the paper upon which the defendant, Orgain, signed his name was attached to or a part of the contract to which it is now attached, at the time he signed his name? Answer yes or no."

In connection with the issue, the court simply charged that the term "preponderance of the evidence" meant the greater weight of credible evidence.

Appellants complain that the court's charge improperly placed upon them the burden of proof.

[4] Upon a contested issue of fact it is not always necessary to charge upon the burden of proof. The issue is to be decided accord-

ing to the preponderance of the evidence. Stookesbury v. Swan, 85 Tex. 563, 22 S. W. 963; Railway v. Dotson, 15 Tex. Civ. App. 73, 38 S. W. 642; Blum v. Strong, 71 Tex. 324, 6 S. W. 167; Railway Co. v. Taylor, 79 Tex. 114, 14 S. W. 918; Railway Co. v. Geiger, 79 Tex. 21, 15 S. W. 214.

[5] The charge simply calls for an answer yes or no, to the issue submitted according to the preponderance of the evidence, which, in the state of the evidence and under the authorities last cited, was a correct submission. We do not regard it as imposing the burden of proof upon either party.

In Kerr v. Blair, 47 Tex. Civ. App. 406, 105 S. W. 548 (writ refused), it was said:

"A charge does not place the burden of proof upon either party, where it simply instructs the jury to determine issues from the preponderance of the evidence."

In Burkett & Barnes v. Miller (Tex. Civ. App.) 106 S. W. 1153, it was said:

"A charge on a contested issue of fact is properly determined either way according to the preponderance of the testimony, and this is all the court told the jury."

See, also, Railway Co. v. Dotson, supra; Bargman v. Brown (Tex. Civ. App.) 95 S. W. 39; Railway Co. v. Alderete, 36 Tex. Civ. App. 142, 81 S. W. 1246; Railway Co. v. Whiteley, 43 Tex. Civ. App. 346, 96 S. W. 109.

[6, 7] It is also objected to the issue submitted that the jury should have been asked whether the contract that Orgain signed contained the deficit clause rather than the question as submitted. It may be that such would have been a better way of submitting the controlling issue in the case, but the effect and meaning of the question as submitted and the jury's answer thereto is plain and cannot be mistaken. The fact that an issue or charge might have been more aptly drawn, of itself, is not reversible. We think the issue submitted fairly and sufficiently submitted the controlling question in the case. If appellants were not satisfied therewith, they should have requested, in writing, an issue in the form desired by them.

The only remaining question relates to alleged misconduct on the part of the jury, based upon the testimony of the foreman of the jury. No other juror testified. The material portion of his testimony is as follows:

"I was foreman of the jury in the case of S. W. Moore, Trustee, v. J. C. Orgain, tried a few weeks ago in this court. That case was given to us by the court for consideration at approximately 11:30 o'clock. We left for lunch at about 1 o'clock, so it would be about an hour and a half that we deliberated before going to lunch. As I recall it, when we left for lunch the ballot stood 6 to 6 with reference to answering the question submitted by the court; 6 wanted to answer, 'Yes,' that the page which Mr. Orgain signed was attached to the contract in question. When we got back from lunch we probably did take another ballot; there was a good deal of discussion and talk, argument pro and con on both sides, and we got into the question of organizers and subscribers. It was finally pointed out that Mr. Orgain was not an organizer, but apparently was a subscriber, and because of the fact that he was a subscriber, he should not be made to pay any of the indebtedness of the organizers. It came up over the fact that Mr. Orgain was not an organizer, that he was simply a subscriber, and, of course, there was talk—a good deal of talk in the jury room about sticking Mr. Orgain, and a good many thought that he should not be stuck, and their reason was that he was a subscriber and not an organizer, and he should not be made to pay any of the organizers' indebtedness. It amounted to agreeing, before the final ballot, that that question would be answered so he would not be stuck. That is what took place. I believed at the time that that instrument was attached to the contract when Mr. Orgain signed it, and I still believe it. I don't remember whether I answered that question 'No' in pursuance with that agreement. Yes, sir; I voted, 'No,' in pursuance with my agreement and the agreement of the other jurors that they would answer that question so Mr. Orgain would not be stuck. It amounted to the other jurors on the panel doing likewise. * * * "

"I certainly can say that there were other jurors that were influenced by that argument. I was, and I would say there were four others —five others. I stated to you what the argument was; I have not failed to state it. I did say I couldn't tell whether the argument that took place was that Clint Orgain, not being an organizer but being merely a subscriber, it would be an asinine thing for him to do to lay himself liable, and it was evidence of probative force that he didn't sign that kind of a contract. I do not say that I was influenced by an argument which I am unable to state, I stated the argument."

[8] The sum and substance of this testimony is that the foreman and several other members of the jury deliberately agreed to a verdict which they believed to be contrary to the true facts. In other words, they agreed to a false verdict. This testimony simply impeaches the verity of the verdict which all of the jury agreed to return. This is not statutory misconduct, but impeachment. Twichell v. Klinke (Tex. Civ. App.) 272 S. W. 283; Heard v. Heard (Tex. Civ. App.) 272 S. W. 501.

[9] And from an early date it has been the established rule in this state that a juror cannot impeach his verdict by affidavit or otherwise. Little v. Birdwell, 21 Tex. 612, 73 Am. Dec. 242; Rogers v. Ilseng (Tex. Civ. App.) 255 S. W. 787; Crosby v. Stevens (Tex. Civ. App.) 184 S. W. 705; Jenkins v. Moore (Tex. Civ. App.) 230 S. W. 886; Jacobsen v. Van Syckel (Tex. Civ. App.) 248 S. W. 124; McIntosh v. Railway (Tex. Civ. App.) 192 S. W. 285.

We do not think recent opinions rendered by the Commission of Appeals and cited by

appellants are to be regarded as holding that a verdict may be impeached by jurors.

[10] Being of the opinion that the testimony did not show misconduct, as distinguished from impeachment, we hold that the trial court did not err in overruling this ground of the motion for new trial.

Furthermore, the alleged misconduct was testified to by the foreman alone. No other juror testified. The bill of exception in which the testimony was incorporated closes as follows:

"Whereupon, the court being of the opinion that the grounds on which plaintiffs sought to impeach the verdict of the jury was not substantiated, the motion was overruled."

[11] We regard this as showing that the trial court found against the issue presented. This is a finding of fact, and this court is bound by it. Railway v. Gray, 105 Tex. 42, 143 S. W. 606; Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889.

[12] The court was warranted in refusing to credit the uncorroborated testimony of a juror, who confessedly violated his oath as a juror by returning a verdict which he believed to be false.

This disposes of all questions presented. No reversible error appearing, the judgment is affirmed.