72  137
76  331

———

## WILLS POINT BANK v. BATES, REED & COOLEY.

### No. 2614.

**1. Admissions by a Partner.**—Letters from one partner to another tending to show a purchase by the firm of a stock of goods of a debtor of the firm to have been secretly intended to be a mortgage of the goods to the firm, is competent in behalf of an attaching creditor attacking the sale as fraudulent. Such testimony was relevant and competent; the letters were not privileged communications, and after the dissolution of the firm its members are competent to testify to such letters and declarations.

**2. Pass Books** are evidence between the bank and depositor; not otherwise, unless admissible as are the books of shopkeepers, etc.

**3. Argument of Counsel — Closing Argument.**—A material issue is not discussed in the opening; if raised in the closing argument and the argument is directed to the court with a view to have a charge upon the point, such conduct of the case is not sufficient ground for reversal.

**4. Same.**—While it is the duty of counsel opening the cause to present the whole case as he relies upon it, both of law and fact, yet it must not be understood by this that counsel must notice every particle of evidence tending to establish a fact or otherwise be denied the right to refer to it.

**5. Jurors—Misconduct of—Affidavits.**—Affidavits of jurors will not be heard in support of a motion for new trial as to the understanding of the jurors as to the facts and the grounds of their verdict.

**6. Conflict in Evidence.**—See facts held insufficient to require a new trial upon the facts.

Appeal from Van Zandt.   Tried below before Hon. F. A. Williams. The opinion gives the facts.

*J. G. Russell*, for appellants, J. M. Lybrand, H. Fuller, and J. W. Fuller. — 1. The court erred in admitting the testimony to the contents of the letters from defendant Lybrand to the partner Williams concerning the nature of the transaction by the appellant with Gugenheim & Co.   1 Greenl. on Ev., sec. 51.

2.   The bank book of Gugenheim with appellant should have been admitted, showing the condition of his account at and before the purchase by the bank of his stock.   1 App. Civil Cases, sec. 1176; Abbott's Trial Ev., 322; 1 Greenl. on Ev., 159.

3.   The concluding argument of counsel for plaintiffs should have been limited to the law and the facts and the argument of opposing counsel, and should not have advanced an argument not alluded to in the opening discussion and to which the defendant had no opportunity to reply.   Rules of Dist. Cts., 36 and 39.

4.   A verdict and judgment will be set aside by the court when it is clearly wrong, as where it is manifestly against the weight of the evidence.   Zapp v. Michaelis, 58 Texas, 270; T. & P. R. R. Co. v. Casey, 52 Texas, 112; Newcomb v. Babb, 2 C. C. Cases, sec. 761.

*C. B. Kilgore* and *Crawford & Crawford*, for appellees, cited Black v. Drury, 24 Texas, 291; Corolan v. Jefferson, 24 Texas, 229; Reynolds v. Lansford, 16 Texas, 287; Baldridge v. Penland, 68 Texas, 444; Douglass v. Mundine, 57 Texas, 344; Zorn v. Tarver, 57 Texas, 388.

Stayton, Chief Justice. — On the 19th day of January, 1882, Bates, Reed, and Cooley had levied an attachment against Gugenheim & Co. on the property in controversy, and on the 20th day of September, 1883, recovered judgment for their debt against Gugenheim & Co., with a foreclosure of their attachment lien—the judgment directing that the order of sale should be suspended to await the result of this suit.

The defendant bank asserts that on the 17th day of January, 1882, two days prior to the levy of the plaintiffs' writ, Gugenheim & Co. were indebted to it in the sum of about $6300, and that in satisfaction of about $5500 of this debt, they purchased Gugenheim & Co.'s entire stock, including the property in controversy.   H. Fuller, W. A. Williams, J. M. Lybrand, and J. W. Fuller composed the banking firm doing business under the style "Wills Point Bank;" and when the attachment was levied on a part of the goods conveyed by Gugenheim & Co. to them, they made the requisite affidavit and filed bond to try the right to the property.

Appellees, in making up issues, alleged that if Gugenheim & Co. made

a sale of the goods to appellant that this was done with intent to defraud their creditors; that it was made to secure a pretended debt having no real existence; and that Gugenheim remained in possession after the pretended sale, selling the goods in the ordinary course of trade, as he had theretofore done.

The defendants in tendering issues alleged that two days before the goods were seized they bought from Gugenheim & Co. their entire stock of goods, including those in controversy, and that in payment they released Gugenheim & Co. from about $5535\frac{71}{100}$ due to them at the time, which was the full value of the goods, and that they at once took possession of the goods, and so were at the time of the seizure. They also denied that the sale was made with intent to hinder, delay, and defraud the creditors of Gugenheim & Co., and alleged that they purchased for the honest purpose of securing the payment of a bona fide debt. They also alleged that Gugenheim & Co. at the time they purchased owed them $6337.50, of which the sum released on account of the purchase was a part.

The trial resulted in a verdict and judgment for appellees.

It does not appear who made the affidavit claiming the property. Williams, one of the claimants, testified in the case in behalf of the appellees, and in the course of his testimony, after stating that he was a member of the firm at the time it is claimed the goods were purchased from Gugenheim & Co., but that he knew nothing personally about it, stated that he was absent from their place of business and received a letter from a member of the firm in reference to the purchase, which he produced. So much of that letter as has bearing on the questions before us is as follows:

" WILLS POINT, TEXAS, January 17, 1882.

" *W. A. Williams, Esq., Pilot Point, Texas:*

"DEAR BILLY—We have purchased Gugenheim & Co.'s stock goods, but will not make it known for a few days on account of some goods yet to arrive, at which time will write you all the particulars. Don't mention this to any person."

He then stated that between the twentieth and twenty-fifth of the same month he received another letter, giving the details of the transaction in reference to the stock of goods. After accounting for the non-production of that letter, he stated its contents as follows: " In this letter Mr. Lybrand made substantially the following statements, to-wit: That their attorney had told them that a mortgage on a stock of goods would not hold; that the bank would have to buy the stock from Gugenheim & Co. straight out to pay their debt, which was about $6300; that the bank did buy the stock from Gugenheim, with the understanding at the time that Thompson was to be put in charge of the goods, but that he, Gugenheim, was to stay in the store in connection with the business, they allowing

him a living out of it until the debt to the bank was paid, when the goods were to go back to Gugenheim; that the purchase had been made to keep Gugenheim's creditors from attaching the goods."

The evidence of Williams in regard to letter last referred to was objected to by appellants on these grounds:

1.   Because there was no issue under which the evidence was admissible.

2.   Because the letter was a privileged communication.

3.   Because the testimony was only the declaration of the witness "as to the status of the transaction between Gugenheim & Co. and defendants, made long after the dissolution of the partnership between witness and his other co-defendants."

It appears elsewhere in the record that the partnership between Williams and the other defendants was dissolved January 1, 1883.

The evidence objected to tended to show that there was not a sale of the goods, but a simulation, under the cover of which the goods should be withdrawn from the reach of other creditors, or that the transaction should be, as between the parties, nothing more than a mortgage, under which Gugenheim & Co. should remain in possession and sell in the ordinary course of trade.

Either of those conditions would make the transaction invalid as to other creditors of Gugenheim & Co., and it was proper to receive under the issues made the evidence offered.

The letter was an admission made by one member of the firm, shown to have been present at the time the transaction with Gugenheim & Co. was consummated, tending to show what its real nature was, and in reference to which either partner could be compelled to testify.

Such declarations or admissions made by one partner to another have never been recognized as privileged communications.   The fact of partnership being shown to have existed at the time the letter was written, and at the time the transaction to which it referred occurred, the writing of the letter and its contents might be proved by any person having knowledge of these facts.

The fact that Williams testified after the dissolution of the partnership does not affect the admissibility of evidence showing an admission or declaration made by one member of the firm prior to dissolution.

Appellants offered to introduce in evidence a book furnished by them to Gugenheim & Co., in which was contained what purported to be a statement of the debts and credits between them, made up from time to time by the appellant and embracing a period before and after the transaction through which they claim the goods.

The credits to Gugenheim & Co. were shown to have been entered in his presence, or in the presence of such person as he sent to the bank with money, but the debits to that firm were transcribed by appellants from a book in which they were originally entered.

That such entries in a pass book would be evidence against the bank in a controversy between it and the depositor is true, and under given circumstances such evidence ought to be received against a depositor, but we do not see on what ground the book offered could be received against a third person. The admission of bank books of original entry is governed by the same rules as is the admission of the books of shopkeepers and others, which however may be varied by the course of business between the parties.

Those of the appellant as well as Gugenheim showed that the indebtedness of Gugenheim & Co. to appellant, prior to the transaction about the goods, was about as claimed by them, and the testimony of the other partner, Williams, did not controvert this.

It was stated, however, by Williams that appellants other than himself were partners in a banking business before he became a member of the firm, and that prior to his so becoming about four thousand dollars of the indebtedness of Gugenheim & Co. accrued and the balance afterwards.

Counsel for appellees, in presenting an argument to the court on the law of the case, insisted that only the indebtedness of Gugenheim & Co. accruing after Williams became a partner should be looked to in determining whether appellant paid an adequate consideration for the goods, and presented a charge embracing that view of the law, which the court refused to give.

It is now insisted that it was error to permit such an argument to be made to the court in closing.

Whether the question was raised earlier in the argument is not clear from the statement made by the judge in signing the bill of exceptions; but if raised only in the closing argument and directed to the court with a view to have a charge on the point, this would not be sufficient ground for reversal.

The evidence was voluminous, and it was the right of counsel for each party to comment upon any and every part of it; but if in opening argument any item of evidence was, through inadvertance or otherwise, not commented upon, counsel closing the argument would not thereby be precluded from calling the attention of the court or jury to it.

While it is the duty of counsel opening the argument of a cause to present the whole case as he relies on it, both of law and fact, yet it must not be understood by this that counsel must notice every particle of evidence tending to establish a fact, or otherwise be denied the right to refer to it.

Counsel for appellants in argument, as in the issues and evidence presented, no doubt insisted on the adequacy of the price claimed to have been paid for the goods and upon the real amount of the indebtedness of Gugenheim & Co. to the bank, and a reply such as is suggested to have been made would be legitimate.

In support of a motion for new trial appellants proposed to introduce affidavits of jurors to show what their understanding of the facts were, and upon what ground they rendered a verdict in favor of appellees, and these the court refused to hear. That such affidavits can not be received is well settled. Mason v. Russell, 1 Texas, 725; Campbell v. Skidmore, 1 Texas, 475; Kilgore v. Jordan, 17 Texas, 346; Little v. Birdwell, 21 Texas, 612; Thomae v. Zushlag, 25 Texas Sup., 229; Johnson v. State, 27 Texas, 769.

If there be any exception to this rule it has not been defined in any case in this State, and no facts were shown by the affidavits offered which are not met by the cases to which we have referred.

It is urged that the evidence so clearly showed that appellants bought the goods absolutely and paid therefor an adequate consideration in the release to Gugenheim & Co. for so much of that firm's indebtedness as to have required the motion for new trial to be granted.

Three members of the firm appellant, as well as Gugenheim, made a case by their evidence that would have entitled them to a verdict, but there was other evidence than that to which we have referred which looked in the other direction.

It was shown that Gugenheim & Co. were insolvent, and in addition to his evidence before referred to Williams testified as follows: "In the summer or fall of 1882 I went out on a camp hunt with Mr. H. Fuller (one of the defendants), and while returning to Wills Point from our hunt we had a conversation about the Gugenheim business, in which Mr. Fuller said that the business was to be carried on in the name of the Wills Point Bank until the Gugenheim debt to the bank was paid, when it was to go back to Gugenheim. That Gugenheim was to have charge of and run the business, allowing him a living out of it only during the time. That he (Fuller) did not care anything about what became of the goods, or of Gugenheim either, after they got their money out of it. That he had given Gugenheim to understand that when the debt to the bank was reduced to $1000 he (Fuller) would help him."

The same witness further stated that "in the month of January, 1883, about one year after the levy of the attachment, the Wills Point Bank rendered a statement to me of the resources and liabilities of the bank, in which there appeared under the head of resources a claim against Gugenheim & Co. for about $2600 then due the bank. This statement was made about the time of the dissolution of my partnership with the bank. It was in the handwriting of J. W. Fuller, one of the firm, and was transmitted to me in a letter from Mr. Lybrand, with the statement that it was substantially correct."

The statement and accompanying letter were produced, and showed that Gugenheim & Co. were indebted to the bank in the sum of $2636.64,

which was then regarded and stated to be a part of the resources or assets of the bank. That the statement was made was admitted by appellants.

These persons stated that Gugenheim & Co. were indebted to the bank only about $800 after buying his goods and releasing him for their price, and that this indebtedness was not increased by Gugenheim & Co. afterwards.

The explanation given of that statement by one or more of appellants is: "The item marked 'Gugenheim & Co.,' $2636.64, was intended to show the lossage on the business we had bought from Gugenheim & Co. Gugenheim's transfer of the stock to us lacked something over $800 of paying his debt to us, and in prosecuting the business we bought from him we lost sufficient to make these two items $2636.64."

The jury may have had some difficulty in understanding how losses could constitute assets or resources, and may have been unable to understand why Gugenheim & Co. should be charged with losses resulting in the conduct of a business by appellants, with goods they had absolutely bought and paid Gugenheim & Co. for.

If appellants bought the goods from Gugenheim & Co. the loss on them was their loss; but if the transaction was not what it appeared to be, and the goods remained the property of Gugenheim & Co., then that firm ought to bear the loss of a business conducted for its benefit, even though the receipts from the business, by agreement between the two firms, were to be applied to the payment of debt due appellants.

The verdict may be wrong; whether so depends on the credibility of witnesses, which was for the determination of the jury.

It is urged in this court, and not before, that the judgment is excessive, in that damages were given on the value of the property claimed, which was in excess of the debt due appellees. If interest on the judgment obtained by appellees against Gugenheim & Co. be computed to date of judgment rendered in this cause, to say nothing of the costs which became by the judgment a part of the debt due appellees, there may be an excess of a few cents in the damages awarded, but if so, the judgment will not be reversed or corrected in this court, when no effort was made in the court below to have this done, the excess being so trifling.

There are some other matters which, without any assignment of errors raising them, appellants attempt to raise in this court, but they are not such as can be considered without proper assignment of error.

There is no error in the judgment requiring a reversal, and it will be affirmed.

*Affirmed.*

Opinion November 27, 1888.