**MURCHISON v. MURCHISON.** (No. 1359.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 26, 1914.)

1. DIVORCE (§ 48*)—GROUNDS—CONDONATION.

Condonation applies to cruelty and other grounds of divorce, as well as to adultery; the only difference being that an act of cruelty is condoned only until the particular act is repeated.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 169, 170, 184; Dec. Dig. § 48.*]

2. DIVORCE (§ 27*)—GROUND—CRUELTY.

Corporal punishment administered by a wife to her stepdaughter was not such cruel treatment of the husband as entitled him to a divorce.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 27, 62–83; Dec. Dig. § 27.*]

3. DIVORCE (§ 49*)—CRUEL TREATMENT—CONDONATION.

Where a husband continued to live with his wife without protest harmoniously for a considerable time after she administered corporal punishment to his daughter, and without mentioning the fact to her, and they separated not because he was unwilling to live with her as his wife, but because she was unwilling to longer live with him as her husband, her act in whipping the daughter was condoned.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 171–179; Dec. Dig. § 49.*]

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by A. J. Murchison against Mary Murchison for divorce. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Norman, Shook & Gibson, of Rusk, for appellant. Perkins & Perkins, of Rusk, for appellee.

WILLSON, C. J. This appeal is from a judgment granting appellee, plaintiff below, a divorce from appellee, on the ground that she had been guilty of such cruel treatment of him as to render their living together insupportable.

Appellant insists the testimony was not sufficient to support the judgment, and, as we think this contention must be sustained, it will not be necessary to consider other questions made by assignments in the briefs.

It seems from the testimony that the parties had been married about two years at the time of the trial in the court below. Each of them had been married before, and appellant then had a daughter about five years old, and appellee had five children then living with him—three sons, aged, respectively, 13, 19, and 22 years, and two daughters, aged, respectively, 9 and 11 years. Testifying as witnesses, the parties agreed they got along together pleasantly enough during the first six or eight months following their marriage, but that thereafterwards, until June 23, 1913, when they separated, they did not always get along together so pleasantly. According to appellee's account of it, his refusal to sell his home in Cherokee county and move to Houston county, where appel-

lant's mother lived, and appellant's mistreatment of his children, were the causes of the disagreements between them. According to appellant's account of the matter, the unpleasantness between them was due to appellee's children's mistreatment of her and his refusal to do anything to protect her from such mistreatment. The specific act of appellant, relied upon as sufficient to support the finding that she had been guilty of such cruel treatment of appellee as to warrant the relief granted to appellee, was her conduct in whipping appellee's youngest daughter, Mattie, three or four weeks before the parties separated. According to the child's account of the incident, appellant, without cause for so doing, whipped her so severely with a peach-tree limb about three feet long and as large as the tip of her little finger, as to cut a place two or three inches in length on one of her legs and another place about as long on one of her hands, deep enough to cause same to bleed profusely, and then threatened to beat her to death if she told any one about it. The child, however, told appellee about the whipping administered to her on the day it occurred, and exhibited to him the wounds she claimed appellant had inflicted on her person. Appellee said nothing to appellant about the matter during the three or four weeks they lived together after the time the child was subjected to the whipping. He gave as a reason why he did not mention it to appellant that the child had requested him not to let appellant know she had told him of the incident. His account of what occurred at the time they separated was as follows:

"The morning we separated my little son spoke something about going to see my married daughter, and I just made the remark that 'I sorter look for them over here to-day,' and my wife blated out that 'she didn't want them to come over here; that she had somewhere to go.' Well, she never had mentioned going to me. When she said that—she had before that raised sand about them [his daughter and her husband] coming down there, and I had said nothing, and it raised my passion that morning when she said that, and I walked out where she was on the gallery and I sat down and commenced this way, 'Why is it you want to raise sand whenever I am looking for my children to come to see us?' and she says, 'I never done it,' and it had not been a minute since she had, and I says, 'It has got so lately that you treat my children like dogs, and if I offer to correct yours the devil is to pay,' and she jumped up and got her bonnet and away she went. I went out there with the full intention of talking to her about the matter, and if she had not agreed to have done better and quit her way of doing, I intended to tell her she would have to hit the road, I wouldn't stand it any longer. When I went out on the gallery and sat down on the steps I intended to have referred to her whipping little Mattie if I had had a chance, if she had stopped long enough. I didn't speak to her about it because she broke it off in the abrupt way she did. She got up and left and didn't let me finish the conversation I started in with. I was speaking to her in a kind manner. I went out there to talk with her about the way she was doing and to tell her she would have to make some reformation or we would have to separate, and I intended to tell her that if she had given me time. I didn't anticipate that she was going to break away so suddenly. She went up to her brother's, who was living on my place."

Appellant admitted she whipped the child, but denied she did so without sufficient cause, and denied she whipped her so severely as to draw blood from her. And appellant's account of what occurred at the time she left appellee differed in some respects from his account as set out above. As, however, the trial court had a right to believe appellee's account and disbelieve appellant's, it is not worth while to state the points of difference between them. Appellee testified he whipped his children "once in a while" while appellant was living with him, and that on one occasion after he and appellant separated he whipped Mattie with a leather razor strop.

[1-3] It seems that "the doctrine of condonation applies as well to cruelty and other grounds of divorce as to adultery; the difference being that an act of cruelty is condoned only until the particular act is repeated." Bingham v. Bingham, 149 S. W. 218; Nogees v. Nogees, 7 Tex. 538, 58 Am. Dec. 78. If, therefore, appellant's conduct in whipping the child was such cruel treatment of appellee as entitled him to a divorce— and we are of the opinion it was not (Eastman v. Eastman, 75 Tex. 473, 12 S. W. 1107; Jones v. Jones, 41 S. W. 413; Bush v. Bush, 103 S. W. 217)—the relief he sought should have been denied him, on the ground that he had condoned the act and it had not been repeated, nor had appellant thereafterwards been guilty of other misconduct. That appellant's act in whipping the child was not such cruelty toward appellee as rendered their living together insupportable conclusively appeared in the fact that for three or four weeks thereafterwards they did live together without complaint on appellee's part, and harmoniously for aught shown in the record to the contrary. And it appeared from appellee's own testimony that he and appellant did not cease to live together because he was unwilling to longer live with her as his wife, but because she was unwilling to longer live with him as her husband.

The judgment will be reversed, and judgment will be here rendered denying appellee the relief he sought.