### HEARD v. HEARD.   (No. 11117.)

(Court of Civil Appeals of Texas. Fort Worth. March 28, 1925.)

**1. Divorce ⬤☞184(9)—Finding on conflicting evidence not disturbed on appeal.**

In action for divorce by wife on ground of cruel treatment and outrages, where evidence was conflicting, verdict and judgment denying plaintiff a divorce will not be disturbed.

**2. Divorce ⬤☞49(2)—Dismissal of divorce suit by wife and resumption of marital relation constitutes condonation of husband's prior conduct, unless such conduct resumed thereafter.**

Statements of husband charging wife with want of chastity were condoned by wife, where subsequent divorce suit was dismissed by her and marital relation resumed, unless subsequently husband was guilty of conduct showing that he disregarded his promises which induced wife to dismiss suit.

**3. Divorce ⬤☞148—Refusal of requested instruction as to wrongfully imputing want of chastity to wife held not error and charge given proper.**

In action by wife for divorce on ground of cruel treatment and outrages by husband, refusal of plaintiff's requested instruction that, if defendant wrongfully imputed to her a want of chastity, that of itself would be sufficient to justify verdict for plaintiff, held not error, and charge given proper.

**4. Divorce ⬤☞184(6)—Overruling new trial not disturbed, where evidence conflicting.**

In action by wife for divorce, overruling of wife's motion for new trial on ground that evidence showed that husband had been guilty of excesses, cruel treatment, and outrages toward wife, will not be disturbed, where evidence is sharply conflicting.

**5. Witnesses ⬤☞383—Bankruptcy schedule filed by husband held properly excluded as impeaching him on immaterial issue.**

In divorce action, where it was not alleged that husband's false swearing to bankruptcy schedule afforded wife a ground for divorce, such schedule, and evidence of defendant's statements relative thereto, *held* properly excluded, as impeaching husband on an immaterial issue.

**6. Trial ⬤☞115(3)—Reading of portions of answer which had been stricken and not introduced in evidence, and comment thereon, held properly disallowed.**

Where certain portions of defendant's answer had been stricken out on exception by plaintiff and had not been introduced in evidence, court properly refused to permit plaintiff's counsel to read such portions of answer or comment thereon in argument.

**7. Trial ⬤☞121(2)—Argument that, if plaintiff's mother would go back where she came from, husband and wife could live in peace, held not improper.**

In action for divorce by wife, argument of defendant's counsel that, "if the old woman (meaning the plaintiff's mother) would go back * * * where she came from," husband could go back to his wife and live in peace, and that "it was the face at the window (meaning plaintiff's mother) that caused the trouble," *held* warranted by evidence.

**8. Appeal and error ⬤☞972—Trial ⬤☞106—Argument of counsel discretionary with trial court, and judgment not reversed because too much latitude permitted, where no prejudice shown.**

Argument of counsel is subject to discretion of trial court, and appellate court will not reverse judgment for sole reason that it believes too much latitude in discussion has been permitted, when it is not made to appear that appellant was prejudiced thereby.

**9. Appeal and error ⬤☞972—Trial ⬤☞121(2)—Argument of counsel drawing deductions from evidence largely within trial court's discretion, and not disturbed in absence of abuse.**

Though counsel cannot go outside record, where matter under discussion was in evidence and only objection was that counsel was drawing an erroneous deduction therefrom, it is largely within discretion of trial court, and appellate court will not interfere in absence of abuse.

**10. Trial ⬤☞121(2) — Counsel in argument may draw every legitimate inference deducible from evidence.**

In argument, counsel may draw from facts in evidence every legitimate inference deducible therefrom, and may argue any hypothesis supported by the evidence, though there is evidence to the contrary.

**11. Witnesses ⬤☞275(2) — Cross-examination of wife seeking divorce, eliciting statement by her as to reason for instituting it, held not error.**

In action for divorce by wife, cross-examination, eliciting statement by wife that she in-

'stituted divorce suit because husband directed dry goods company with whom the family were trading not to extend her further credit, *held* not error.

**12. Trial ⬤≈344—Jurors ordinarily not permitted to impeach their verdict by testimony that they were misled by arguments of other jurors or misunderstood charge.**

Ordinarily, jury may not impeach its own verdict by affidavit or testimony to the effect that some jurors were misled or overreached by arguments of other jurors.

**13. Husband and wife ⬤≈136—Wife may prevent husband from interfering with management and control of her separate estate.**

Since, under Rev. St. art. 4621, all property of wife owned by her before marriage and acquired afterwards by gift, devise, or descent, is her separate property, if husband, after separating from wife, seeks to interfere with management and control of separate estate of wife, she may apply to court for appropriate remedy.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Divorce action by Lula A. Heard against John L. Heard. From judgment denying plaintiff a divorce, she appeals. Affirmed.

R. H. Hopkins, of Denton, W. O. Davis, of Gainesville, and Ed I. Key and Owsley & Owsley, all of Denton, for appellant.

Geo. M. Hopkins and Brent C. Jackson, both of Denton, for appellee.

BUCK, J. This is an appeal from a judgment of the district court of Denton county, denying plaintiff a divorce. Plaintiff alleged: That she and defendant were married December 7, 1902, and lived together until June 2, 1922, since which time they had been separated. That there were seven children, all girls, the fruits of their marriage, to wit, Eureka, 17 years of age; Elsie, 16; Vera, 13; Goldie, 10; Mary, 8; Iris, 6; and Arabella, 3. The petition was filed on December 4, 1922. Plaintiff alleged that defendant had been guilty of excesses, cruel treatment, and outrages, rendering their longer living together insupportable in this: (a) That about 16 years ago, at their then home in Cooke county, while the plaintiff was in poor health, and one of their children was a baby, the defendant wrongfully abused her and called her a liar, and frequently thereafter told the plaintiff she was a liar; that during the year 1921, while plaintiff and defendant were living at her mother's home, in Cooke county, defendant denounced the plaintiff and her mother and the plaintiff's two daughters as liars, and at about the same time ordered plaintiff's mother off of her own place, where plaintiff and defendant were then living. (b) At about eleven years prior to the filing of the suit, while plaintiff and defendant were living on plaintiff's own place, in Cooke county, the defendant, in an angry and threatening manner, and without excuse, ordered the plaintiff to get her clothes and leave her home. (c) That in the early part of 1921, while Carl James, a nephew of defendant, was living with the plaintiff and defendant at plaintiff's home, and the plaintiff was sending him to school at her own expense and at the request of defendant, defendant said: "Why don't you go upstairs and sleep with Carl, or have him come downstairs and sleep with you; that is what you want"—thereby without cause, excuse, or justification, wrongfully imputing to the plaintiff a want of chastity, and grieviously mortifying and humiliating her. (d) That on September 20, 1920, at their home in Cooke county, the defendant wrongfully, and in an angry and threatening manner, struck and pushed the plaintiff, and repeated the act on or about the month of July, 1921, and that during the month of January, 1923, at the plaintiff's home in Denton county, the defendant drew his fist on plaintiff and threatened to strike her, and during the same month he drew his fist on the daughter Eureka; and in the summer of 1922, the defendant without cause told his daughter Elsie that he ought to kick her out of the house, and told his daughter Eureka that he ought to throw her out of the window. That in the summer of 1921, at their home in Denton county, the defendant, in the presence of plaintiff, wrongfully called his daughter Eureka a damned fool, and upon another occasion, about the same time, the defendant said to the plaintiff that "he was going to hell, and drag his family with him." (e) That the defendant at the plaintiff's home in Denton, and in Cooke county, frequently told the plaintiff that she was acting the damn fool, and upon occasions too numerous to mention denounced the plaintiff and her mother as "hell cats." (f) That on January 14, 1923, in their home at Denton, the defendant wrongfully accused the plaintiff of swearing a lie, such wrongful accusation being made by the defendant in the presence of plaintiff's children. (g) That defendant continuously and wrongfully collected the rents from plaintiff's separate estate, consisting of 200 acres of farm land in Cooke county, and that defendant has refused to work, though able to do so, and has wrongfully failed to contribute to the support of his children, while hiring hands to do the work, which he should have done himself, though plaintiff was forced to cook for such hands. (h) That during the month of January, 1922, the plaintiff suffered a loss by fire on her separate real estate, and the defendant wrongfully collected and appropriated to his own use the sum of $2,250 paid by the insurance company.

Plaintiff seems to have alleged in her first amended original petition that defendant no-

---

tified a dry goods company in Denton not to let plaintiff and his family have any more dry goods, but that portion of the petition was excepted to by defendant in his answer, and the second amended petition, being the only one in the transcript, does not contain the allegation.

Plaintiff prayed that she be granted a divorce from defendant and for the custody of their children, and the right to her separate property, both real and personal, be established, and that she recover her costs.

It appeared from the argument of counsel in this court, and from the testimony, that the trial court had granted plaintiff an injunction against defendant, restraining him from coming on the premises, except once a week to see the children; but there is no showing in the transcript that such relief was prayed for or granted, except that in the order of the court overruling plaintiff's motion for a new trial, the court provided that the injunction theretofore granted against the defendant should continue in full force and effect during the pendency of this appeal.

In the statement of facts, as well as in the pleadings of plaintiff, it was shown that during the fall of 1921, plaintiff instituted a suit against defendant for divorce, and that the defendant induced her to live with him again, promising that if she would dismiss the suit he would thereafter treat her with kindness, and so conduct himself that she would have no cause to complain; that the plaintiff relied upon these promises, dismissed her petition for divorce, and agreed to live again with defendant, but it was alleged that he disregarded his promises and thereafter renewed and repeated his misconduct, and treated the plaintiff worse than before, and the plaintiff again was forced to separate from him.

Plaintiff and her witnesses, consisting of her husband's nephew Carl James, her daughters Eureka and Elsie, and her brother W. E. Dickinson and his wife, and her tenant on the farm in Cooke county, Bill Davis, testified substantially, in support of the grounds for divorce alleged in plaintiff's petition. But the defendant and his witnesses, 18 in number, including Vera and Goldie Heard, his third and fourth daughters, 14 and 11 years of age, respectively, in the main, contradicted the testimony of plaintiff's witnesses as to the alleged reprehensible conduct of defendant. Some 13 witnesses, both men and women, neighbors of the Heard family, both in Cooke and Denton counties, testified to circumstances tending to show that defendant had been a good and dutiful husband and father, showing a keen interest in the welfare of his family, taking the children back and forth to school in a conveyance in bad weather, taking his wife and children to church, etc., and that he did all that could reasonably be expected of a husband and father in the care and protection of his family.

[1] In view of this conflict of testimony, we cannot disturb the verdict of the jury, and the judgment of the trial court, denying plaintiff a divorce. The judge and jury who heard the witnesses testify are better judges of their credibility and of the facts than we are. Gardenhire v. Gardenhire (Tex. Civ. App.) 258 S. W. 1077, and numerous other cases.

Appellant in her first assignment complains of the refusal of the trial court to give this instruction:

"If the defendant wrongfully imputed to the plaintiff a want of chastity, and wrongfully accused her of improper relations with Carl James, that of itself would be sufficient to justify a verdict in favor of the plaintiff."

The court charged that:

"The plaintiff, Lula A. Heard, is entitled to a divorce if the defendant has been guilty of excesses, cruel treatment, or outrages toward her of such a nature as to render their living together longer as husband and wife insupportable.

"The material allegations in plaintiff's petition are that defendant called plaintiff a liar, and shook his fist at her, saying he ought to use that on her; and that he accused plaintiff of swearing falsely; and that the defendant pushed and slapped the plaintiff; and that he accused her of being a damned fool; and that he forged her name upon a promissory note and to a receipt for the amount due on a fire insurance policy; and conspired with a tenant to deprive plaintiff of the right to lease her separate land to whom she pleased; and accused the plaintiff of being a hell cat, and ordered her to leave her home; and of saying to plaintiff that she ought to go upstairs and sleep with Carl James or have Carl James come downstairs and sleep with her. The question for you to determine is whether or not the material allegations in plaintiff's petition are true.

"You are therefore instructed that if you find and believe that the material allegations of plaintiff's petition are true, or any part thereof, and are of such a nature as to render the living together of plaintiff and defendant as husband and wife longer insupportable, then plaintiff would be entitled to a divorce.

"If, however, you do not find from a preponderance of the evidence that the material allegations in plaintiff's petition are true, or, if true, that they are not of such a nature and extent as to render the further living together of plaintiff and defendant as husband and wife insupportable, then your verdict will be for defendant."

[2] The alleged statement of defendant, referred to in the portion of the charge quoted, and in the testimony of plaintiff, and in the tendered charge, was made prior to the institution of the first suit for divorce, and upon plaintiff's dismissal of that suit, and the resumption of the marital relation with the defendant, plaintiff condoned any conduct of the defendant giving grounds for divorce,

unless subsequently the defendant was guilty of conduct showing that he disregarded his promises to his wife, which are alleged to have induced her to dismiss the suit and to live with him again as his wife.

Defendant testified that he did make the remark to his wife that, "Why don't you go upstairs and sleep with Carl, or have him come downstairs and sleep with you," but denied that he said, "That is what you want." He testified that the remark was made while he was hurt, and because he came home one day and found the girls downstairs and asked where his wife was, and that they told him she was upstairs with Carl; that he went upstairs and found her in the room with Carl talking; that he never questioned the virtue of his wife and believed then and at, the time he was testifying that she was a pure and virtuous woman.

[3] We find no error in the refusal of the court to give the tendered charge and believe that the charge as given was proper. Dority v. Dority (Tex. Civ. App.) 62 S. W. 106; Bingham v. Bingham (Tex. Civ. App.) 149 S. W. 214; Murchison v. Murchison, (Tex. Civ. App.) 171 S. W. 790; Parker v. Parker (Tex. Civ. App.) 204 S. W. 493.

[4] The second assignment of error complains of the trial court in overruling the motion for new trial, inasmuch as, as alleged, the evidence showed that defendant had been guilty of excesses, cruel treatment, and outrages toward her of a nature to render their living together insupportable. We overrule this assignment, for the reasons stated hereinabove that the evidence as to such cruel treatment was sharply conflicting, and that the jury and judge are the best judges of its credibility and effect.

[5] The fourth assignment of error complains of the action of the trial court in sustaining the objection of the defendant to a schedule of property filed by defendant in the bankruptcy court. This schedule purported to include the personal property of the defendant at the time it was filed. Appellant's counsel asked defendant, while a witness on the stand, if he did not have a pump that he hid out to keep from including it in his assets when he filed his bankruptcy petition. Defendant denied that he had a pump that he hid out, and testified that he reported all of his pumps and tanks and everything; that he did not know whether or not there was a pump down at Fowler's that was left out; there was not anything said to him about it, and that Mr. Fowler had this pump in charge; that he did not know whether the schedule offered him was a true copy or not of the bankruptcy schedule; that he did not know whether he included that pump in the schedule, but that he included all of his pumps and equipment; that he did not know whether he told Homer Harris that he was going to leave this pump out and save it.

No allegation is contained in the petition that by reason of the defendant's swearing falsely to this schedule that it afforded plaintiff a ground for divorce. Therefore we conclude that it was an effort to impeach defendant upon an immaterial issue, and overrule this assignment and the one directed to the refusal of the court to permit the witness Homer Harris to testify to statements alleged to have been made to him by defendant with reference to the pump.

[6] Assignment of error is also directed to the refusal of the court to permit the plaintiff's counsel to read in the hearing of the jury the portion of defendant's answer reading as follows: "The defendant further avers that the plaintiff is a true and virtuous woman." And in refusing to permit the plaintiff's attorney, W. O. Davis, to comment thereon in his argument. The bill of exception shows that the counsel for plaintiff offered and undertook to read from the defendant's answer the allegation above quoted, but the district judge approved the bill of exception with the qualification:

"The portion of defendant's answer that counsel proposed to read to the jury has been stricken out on exception by the plaintiff."

It also appears from the bill of exception that said statement had not been introduced in evidence. We think the trial court's action in sustaining the exception to the reading of or the commenting on that portion of defendant's pleading, not in evidence and not before the court, shows no error.

[7] Appellant urges error in the use of the following statement by counsel for defendant below in his argument to the jury:

"If the old woman (meaning the plaintiff's mother) would go back to Loraine, where she came from, John Heard could go back to his wife and children and live in peace and happiness. It was the face at the window (meaning plaintiff's mother) that caused the trouble."

Plaintiff objected to this argument on the ground that no evidence had been introduced authorizing the statement, and that the same was a voluntary statement of the counsel calculated to prejudice the jury against the plaintiff and mislead the jury from the true issues involved in the case. There is sufficient evidence in the record to support the conclusion that plaintiff's mother raised an objection to the efforts of defendant to have running water in the kitchen for the convenience of his wife and children after the Heard family moved to Mrs. Dickinson's.; that Mrs. Dickinson objected to his taking milk out to some hands defendant had working for him. Defendant testified that they had plenty of milk and that he had told his hands he would bring them some; that there were several buckets of milk setting on the table, and he went to get a bucket, and a dispute arose about there being some cream

on the milk, and when he went to get the night milk, from which the cream had already been removed, the mother-in-law objected to that. At least, these are the facts gathered from the testimony of plaintiff and defendant with reference to the matter. The reference to the "face at the window," evidently, is in regard to the portion of the testimony of witness Ralls, who said:

"That night when Mr. Heard went out to milk, I went around the corner of the house with him, and I happened to just look up at the window as he passed out, and I saw Mrs. Dickinson sitting in there, and I drawed an idea right then and there— "

There evidently the court sustained the objection of plaintiff to any further testimony of witness as to what his ideas were.

[8] The line and method of argument of counsel is largely subject to the discretion of the trial court, and the appellate court will not reverse a judgment for the sole reason that it might believe that too much latitude in discussion had been permitted, when it is not made to appear that the appellant was prejudiced thereby. T. & P. Ry. Co. v. Garcia, 62 Tex. 285; Nesbitt v. Walters, 38 Tex. 576; Mo. Pac. Ry. Co. v. Lamothe, 76 Tex. 219, 13 S. W. 194.

[9, 10] Although counsel has no right to go outside the record and discuss matters not in the evidence, yet where the matter under discussion was in evidence, and the only objection was that counsel in using it was drawing an erroneous and hurtful deduction therefrom, it is held that it is largely within the discretion of the trial court, and that the appellate courts are not usually authorized to interfere, in the absence of some abuse of discretion. Counsel have the right, in the argument of the case to the jury, to draw from the facts in evidence every legitimate inference deducible therefrom. Southern Cotton Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; T. & N. O. Ry. Co. v. Conway, 44 Tex. Civ. App. 68, 98 S. W. 1070, writ of error denied. And counsel may properly argue any hypothesis supported by the evidence, though there is evidence to the contrary. Ry. Co. v. Conway, supra. Counsel has the right to argue any reasonable deductions from the evidence. Moore v. Rogers, 84 Tex. 1, 19 S. W. 283; Paschal v. Owen, 77 Tex. 587, 14 S. W. 203.

[11] It is urged that the court erred in overruling the motion for new trial on the ground that the jury were misled and induced to render their judgment by the statement of plaintiff, drawn from her on cross-examination, to the effect that she was caused to institute this suit for divorce by the act of defendant directing that the dry goods company with whom the family was trading should not extend to her further credit. She did testify that this was one of the grounds upon which she sought the divorce, and that that act hurt her the worst.

The defendant testified that he owed the dry goods company more than he could pay, and that he told them not to sell any more goods to his family until he had paid the bill then owing. We overrule this assignment.

[12] Ordinarily, it is not permissible to allow a jury to impeach its own verdict by affidavit or testimony, to the effect that some of the jurors were misled or overreached by the arguments or statements of other jurors, where the statements do not refer to facts not in evidence, or that they misunderstood the charge of the court as to the purport of the pleadings or the effect of the testimony. Little v. Birdwell, 21 Tex. 597, 73 Am. Dec. 242; Gurley v. Clarkson (Tex. Civ. App.) 30 S. W. 360; 29 Cyc. p. 982, § 3; Wills Point Bank v. Bates et al., 72 Tex. 137, 10 S. W. 348; L. & G. N. Ry. v. Gordon, 72 Tex. 44, 11 S. W. 1033.

[13] The evidence in this case shows that all of the property, except possibly some of the household effects, belongs to the separate estate of the wife; that she will be able to support herself and children from the revenues of her farm, together with some assistance that her mother is willing and able to give; that the defendant has been very unfortunate in his business efforts and investments, and his experience has not shown that he is able to manage the separate estate of his wife successfully. Under article 4621, Rev. Civ. Statutes, it is provided that all property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, and rents and revenues derived therefrom, shall be the separate property of the wife, and the wife shall have the sole management, control and disposition of her separate property, both real and personal. Therefore, if the defendant should seek to return home, and interfere with the management and control of the separate estate of the plaintiff, she can apply to the district court for appropriate remedies.

While a divorce suit is always sad, involving as it does the weaknesses and frailties of human nature, and perhaps the positive wrongs and acts of misconduct on the part of one or both of the parties to the marriage contract, yet in a majority of cases of matrimonial differences, the cure therefor is in the hands of the parties themselves. Where a husband and wife have children, the fruits of their marriage, it is certainly a consummation to be desired that each forgive and forget these disagreements, and, hand in hand, and heart to heart, strive to give to their children the loving care, support, and tender affection so important in rearing a family. It is to be hoped that in the present case such may be the result. To that end, we would suggest that the husband continue his work at his present employment or some other employment, and that he send his wife and children such funds as he is able to con-

tribute toward the support and education of his children. By this conduct he can prove to his wife the wisdom of the verdict of the jury and the judgment of the trial court in denying his wife a divorce, and it may be at some future time that he and his wife shall be reunited.

The judgment of the trial court is affirmed.