**LAMBERT v. GANT et al. (No. 11638.)**

(Court of Civil Appeals of Texas. Fort Worth. Nov. 13, 1926.)

**1. New trial ⬤═6—Granting new trial is largely discretionary.**

Matter of granting new trial is largely within discretion of trial court.

**2. Appeal and error ⬤═977(3)—Setting aside verdict and granting new trial will be upheld, unless court abused discretion.**

Action of trial court in setting aside verdict and granting new trial will be upheld on appeal, unless it appears that court abused discretion in so doing.

**3. Mines and minerals ⬤═48—Gas and oil in place constitute "real property," and rules regulating ownership and conveyance of real property apply thereto.**

Gas and oil in place constitute real property and as such is subject to ownership and conveyance in accordance with rules regulating ownership and conveyance of that class of property.

[Ed. Note.—For other definitions, see Words and Phrases First and Second Series, Real Property.]

**4. Husband and wife ⬤═267(3)—Signature of wife to oil and gas lease on community property in which no homestead was claimed was unnecessary (Rev. St. 1925, arts. 1299, 1300, 4613, 4614, 4618, 4619).**

Signature of wife to oil and gas lease, signed by husband, on community property in which no homestead was claimed, was unnecessary to perfection of valid title, in view of Rev. St. 1925, arts. 1299, 1300, 4613, 4614, 4618, 4619.

**5. Fraud ⬤═58(1)—Evidence of damages held not to warrant lessee's recovery for false statement that wife of lessor had signed oil and gas lease (Rev. St. 1925, art. 4004).**

Lessee under gas and oil lease could not recover damages for alleged false statement that wife of one of lessors had signed lease placed in escrow, in reliance upon which he had proceeded to drill as agreed, where evidence did not show cost of drilling nor that lease deposited in escrow was valueless without such signature, in view of Rev. St. 1925, art. 4004.

**6. Appeal and error ⬤═1—Right to appeal must be found in legislative grant.**

Appeal is not a constitutional right, but right, if any, must be found in legislative grant.

**7. Appeal and error ⬤═1178(4)—On appeal from order granting new trial, Court of Civil Appeals cannot render final disposition (Rev. St. 1925, art. 2249).**

On appeal from order granting new trial, right of final disposition cannot be exercised by Court of Civil Appeals, since there is no final judgment before it, but errors in case may be considered only to determine whether trial court exercised proper judicial discretion, in view of Rev. St. 1925, art. 2249.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by B. Lambert against G. N. Gant and others. Judgment for plaintiff, and, from a judgment granting motion for new trial, plaintiff appeals. Affirmed.

E. E. Fischer and T. F. Hunter, both of Wichita Falls, for appellant.

Kay, Akin & Smedley, of Wichita Falls, for appellees.

CONNER, C. J. This suit was instituted by appellant, B. Lambert, in the district court of Wichita county on the 6th day of August, 1925, complaining of G. N. Gant and wife, Emma Gant, and W. P. Stokes and wife, Annette Stokes, alleging that on or about the 20th day of October, 1924, the plaintiff and defendants entered into "a written agreement" whereby the defendants agreed to execute and deliver to the plaintiff in escrow with the Wichita State Bank & Trust Company, of Wichita Falls, an oil and gas lease on what is commonly known as "producers' 88 form," on a tract of land described in the petition, and alleged to have been owned jointly by the defendants; a copy of the contract being attached to the petition as an exhibit. It was further alleged that, as a consideration for the delivery of the said oil and gas lease, the plaintiff agreed to commence the drilling of a well for oil or gas on a tract of land near that described in the lease, and, after beginning the same, to prosecute such drilling with reasonable diligence until the well should be completed to a depth of 1,800 feet,

unless oil or gas should be discovered at a lesser depth; that the contract further provided that, if the plaintiff should in good faith begin operations for drilling said well within the time specified, then said Wichita State Bank & Trust Company was authorized to deliver the lease to the plaintiff.

It was alleged that the lease in the form specified in the contract had been executed by defendant G. N. Gant and his wife, Emma Gant, and W. P. Stokes, and deposited with the bank in escrow, but that the same had not been signed or executed by the defendant Annette Stokes; that, after the plaintiff had commenced the drilling of a well as provided for in said contract, "he had a purchaser for said 50-acre lease, and, upon investigation at the bank, the escrow holder, he discovered that said lease had in fact not been signed by the defendant Annette Stokes, and the defendants and each of them and through their agents upon inquiry by plaintiff had told plaintiff that said lease had been signed by all of said defendants and had been placed in escrow with said bank, and plaintiff, relying on the statements that the lease had been executed as represented and as called for in the contract, began the operations of said lease and prosecuted the same with due diligence to its completion, and through the fraud and misrepresentations on the part of the defendants that said lease had been executed in legal form plaintiff was unable to make title to said lease and was thereby damaged in the sum of $5,000, the reasonable market value of said lease after the well was commenced; that, if defendants had delivered said lease in due and legal form, with all the signatures of the defendants, he could have sold the same for the sum of $5,000 cash, and, although often requested, defendants and each of them have failed and refused to pay the same, to his damage in the sum of $5,000; that defendants and each of them, by virtue of said written contract, became obligated and bound and promised to deliver said lease with all the signatures for a valid lease to said land to plaintiff, and thereby became liable to plaintiff for the damages incurred; * * * that plaintiff relied on the representations of defendants and their agents that said lease had been signed and acknowledged by all parties concerned, and acted on such representations and began the drilling of said well as he had contracted and spent his money for the drilling of the same, and in good faith believed said representations of defendants to be true, and, if said representations had been true, plaintiff would have been able to sell said 50-acre lease for the price above specified, and through the fraud and misrepresentations on the part of defendants plaintiff is damaged in the sum of $5,000 as aforesaid," for which he prayed judgment.

The contract declared upon and attached to the petition as an exhibit reads and is signed as follows:

"The State of Texas, County of Wichita.

"Know all men by these presents: That this escrow agreement, made and entered into this 20th day of October, 1924, by and between W. P. Stokes and wife, Annette Stokes, G. N. Gant and wife, Emma Gant, party of the first part, and B. Lambert, party of the second part, witnesseth:

"(1) That party of the first part is the owner of a certain tract of land in Archer county, Tex., fully described in the original lease hereto attached. ·

"(2) That party of the second part has agreed to begin operations for the drilling of a well on the following described tract of land: Block 66 Lula P. Hunt subdivision of Brazos county school lands of W. P. Coleman ranch—Said well to be drilled in the southeast corner of said above-described tract of land, on or before 30 days after approval of title to said land, and that, after having begun said operations, to prosecute them with reasonable diligence until said well is completed to a depth of 1,-800 feet, or to what is known as the 'big lime,' if same is found at a lesser depth, unless oil or gas is found in paying quantities at a lesser depth; and, in case said operations are not begun within said time, or are not prosecuted with reasonable diligence, or is not drilled to oil or gas in paying quantities or to a depth of 1,800 feet, unless the 'big lime' is encountered at a lesser depth, then, as liquidated damages the lease hereto attached shall be forfeited to the lessors, and this contract to become null and void as to both parties.

"(3) Party of the first part is to execute an oil and gas lease on what is commonly known as a producers' form 88, to second party, which said lease is to be placed in escrow, together with this contract, in the Wichita State Bank & Trust Company, of Wichita Falls, Tex. If second party shall in good faith begin operations for drilling of said well within the time above specified, then said bank is authorized to deliver the attached lease to second party; but, upon failure to so begin operations, same shall be returned to first party as undelivered, and shall thereafter be of no force and effect.

"(4) Party of the first part agree to furnish an abstract of title brought down to date for examination purposes only, covering the land described in attached lease, showing good and merchantable title in him, in and to the oil and gas mineral rights upon the land described in attached lease, and should said title be found not good and merchantable in first party, and he is unable to perfect the same within a reasonable time this contract shall wholly terminate as to both parties hereto.

"Witness our hands this —— day of January, 1924. .

                       W. P. Stokes,
                    "G. N. Gant,
                      "First Parties.
                    "B. Lambert,
                      "Second Party."

The defendant answered by a general denial and specially that the lease had been forfeited by the failure of plaintiff to drill the well as specified in the contract or to pay rentals due on the lease May 7. 1925.

The case was submitted to a jury on spe-

cial issues, in answer to which the jury found that the defendants Gant and Stokes had agreed with the plaintiff that the lease deposited in the bank should be signed by Mrs. Stokes, and that the failure of Mrs. Stokes to sign the lease caused the plaintiff to lose the sale of the same. They further found that the reasonable market value of the lease at the time it was offered to Beaudoin, in April, 1925, was $25.00 per acre. Special issue No. 4 was as follows:

"Did either of the defendants inform plaintiff, Lambert, that a lease had been deposited in the bank executed by all parties in the contract?" To this issue the jury answered "Yes."

Upon the introduction of the evidence, the defendants requested a peremptory instruction in their favor, which was refused, and also objected to the submission of the issues presented on the grounds, among others, that the suit was based on a contract in writing, and that it was a question of law to be determined by the court whether the written agreement required the signature of Mrs. Stokes, and for the further reason that there was no evidence proving or tending to prove that the failure of Mrs. Stokes to sign the lease caused the plaintiff to lose the sale of the same. All exceptions of defendants were overruled, and the court entered judgment for the plaintiff against G. N. Gant, Emma Gant, W. P. Stokes, and Annette Stokes "jointly and severally" for the sum of $1,250, with interest at 6 per cent. from the date of the judgment, and all costs.

The defendants seasonably filed their motion for a new trial. The motion covers eleven pages of the transcript, and contains some 28 grounds or reasons why the new trial should be granted as prayed for. We do not deem it necessary to detail all of the grounds of the motion, but, in substance, the defendants complained of the judgment, among other things, on the ground that the court should have determined as a matter of law whether the contract filed by G. N. Gant and W. P. Stokes constituted a binding obligation on their part to secure the signature of Mrs. Stokes to the lease in contemplation of the parties, and, further, that the undisputed evidence was to the effect that the defendants did execute and place in the bank a valid lease; that there was no evidence that the lease as executed was valueless; that the court erred in permitting the plaintiff, over the objections of defendants, to testify to agreements and oral promises made by the defendants before and at the time of the execution of the contract that Mrs. Stokes would sign the lease, for the reason that said oral promises contradicted and varied the written contract; that the evidence was wholly insufficient to support the answers of the jury to the special issues, etc.

The motion of the defendants for a new trial came on to be heard on the 21st day of November, 1925, and the hearing resulted in a judgment granting the motion and setting aside the original judgment that had been rendered upon the verdict of the jury, and it is from the judgment granting the motion for a new trial that this appeal has been prosecuted.

[1, 2] It is well established by the authorities that the matter of granting a new trial is largely within the discretion of the trial court, and that its action in setting aside the verdict and granting a new trial will be upheld unless it thereby appears that the court abused his discretion in so doing. See Tarbutton v. Ambriz (Tex. Civ. App.) 282 S. W. 891; Adamson v. Collins (Tex. Civ. App.) 286 S. W. 598; Smith's Heirs v. Hirsch (Tex. Civ. App.) 197 S. W. 754; Heard v. Heard (Tex. Civ. App.) 272 S. W. 501; Mutual Oil Consolidated v. Beavers (Tex. Civ. App.) 272 S. W. 507. A consideration of the record in the light of this rule has led us to the conclusion that we cannot disturb the judgment of the trial court in granting the motion.

[3] It is now an established rule in this state that gas and oil in place constitute real property and as such is subject to ownership and conveyance in accordance with the rules regulating the ownership and conveyance of that class of property. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Stephens Co. v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566.

Our statute (article 1299, Rev. Statutes of 1925) provides that the husband and wife shall join in the conveyance of real estate, the separate property of the wife; and that no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded and certified to in the mode pointed out in the statutes. The next article (1300) declares that the homestead of the family shall not be sold and conveyed by the owner, if a married man, without the consent of the wife. And it is required that such consent shall be evidenced by the wife joining in the conveyance, and signing her name thereto, and by her separate acknowledgment thereof, taken and certified to before the proper officer.

So far as applicable to the matter before us, our statutes classify property owned by husband and wife as either separate or community property. Article 4614, Rev. Statutes of 1925, declares that:

"All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase of all lands thus acquired, * * * shall be the separate property of the wife."

The separate property of the husband is similarly defined in article 4613. Article 4619 provides that:

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only."

The power of the husband thus given to convey community property is limited by article 4618 of the statutes, which provides that:

"The homestead, whether the separate property of the husband or wife, or the community property of both, shall not be disposed of except by the joint conveyance of both the husband and the wife."

[4] In the case before us, the evidence shows without dispute that the land the defendants contracted to lease was jointly owned by them; that upon such land the homestead of G. N. Gant and wife, Emma Gant, had been fixed, and that the interest therein of the defendants W. P. Stokes and wife had been acquired during their marriage and as to them was their community property, and these two defendants testified without contradiction that they had never lived on the land as their homestead and had no intention of doing so, and there is no evidence whatever to be found in the statement of facts that they had made any preparation to so do. It was developed in the evidence that neither appellant nor the person to whom he alleges he could have sold had consulted legal or other advice as to the legal effect of the title to the land described in the lease deposited in escrow, and, if the statutes referred to mean what is therein declared, the signature of Mrs. Stokes to the lease deposited in escrow was unnecessary to the perfection of a valid title. Dallas Plumbing Co. v. Harrington (Tex. Civ. App.) 275 S. W. 190; Jones v. Hanna, 24 Tex. Civ. App. 550, 60 S. W. 279. To hold otherwise would enable one contracting to purchase lands and who becomes dissatisfied with his bargain to avoid the obligations of his own contract and impose liabilities upon the other party, grounded on some hypercritical objection to the title involved. In speaking of a title eminating from a sovereign power, our Supreme Court, in the case of Paschal v. Perez, 7 Tex. 348, said:

"An imperfect title is one which requires a further exercise of the granting power, to pass the fee in the lands, which does not convey full and absolute dominion, not only as against all private persons, but as against the government, and which may, consequently, be affirmed or disavowed by the political or granting authority."

In the case of Todd v. Union Dime Sav. Inst., 128 N. Y. 636, 28 N. E. 504, the Court of Appeals of New York declared that:

"A purchaser is not entitled to demand a title absolutely free from all suspicion or possible defect. He may claim a marketable title, and that means a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept."

In this connection it may be well to note that the written contract on its face imports no more than that a good and valid title shall be conveyed. There is no express agreement therein that the wives of the husbands who executed the contract should sign the lease. That conclusion, if assumed, must arise by construction and inferences from the terms used. We also note that the wives of the defendants did not execute the contract, and there is no evidence whatever in the record that they, or either of them, individually promised to execute the lease or authorized their husbands to so promise. We further observe that the judgment which the trial court set aside in granting the motion for new trial is for the full sum stated, jointly and severally against the wives as well as the husbands.

The record further discloses that on the trial of the main case the plaintiff was permitted, over the objection of the defendants, to offer evidence tending to show that some one or more of the defendants orally promised that Mrs. Stokes would sign the lease. But plaintiff's petition seems to have been based upon the written contract alone, and there are no allegations in the petition to the effect that the oral agreement had been omitted from the written contract by accident, mistake, or fraud, and we think it must be said that it is at least doubtful, if not certain, that there is no such uncertainty or ambiguity in the written contract as authorized the introduction of the parol agreement referred to.

[5] Among other allegations in the single count of plaintiff's petition were some to the effect that the defendants had falsely and fraudulently stated to the plaintiff that Mrs. Stokes had in fact signed the lease, and that in consequence thereof he had at great expense proceeded to drill as he had agreed to do in the written contract. But we do not feel prepared to say that the judgment can be supported on this theory. The measure of damages in cases of actionable fraud, as now prescribed by our statutes (article 4004, Rev. Statutes of 1925) is that the person guilty of the fraud alleged—

"shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract."

In the statement of facts before us, we find no evidence showing or tending to show the cost incurred by appellant in drilling, as he alleges he did, nor evidence showing or tending to show that the lease actually deposited in escrow was valueless so as to afford a proper basis for the judgment, on the theory of alleged fraudulent representations by the defendants.

We conclude on the whole, and without noticing other alleged errors in the original proceedings, that the court was fully justified in granting the new trial.

[6, 7] Before finally concluding this opinion, we deem it proper to notice appellant's suggestion that the error, if any, in rendering judgment against the wives of the defendants, may and should be corrected by this court by reformation of the judgment in that respect, and to also notice further contentions on the part of appellees by cross-assignments of error that we should, under the undisputed facts, reverse and render the judgment below in their favor. We have not felt that we could, under the circumstances shown in this record, comply with such request. The jurisdiction of this court is appellate only. By our laws, Courts of Civil Appeals, with exceptions not necessary to here notice, are given appellate jurisdiction in civil cases of' final judgments of the district and county courts, and also from "every order of a district or county court in civil cases granting motions for new trials." See article 2249', Rev. Statutes of 1925. It has been often held that an appeal is not a constitutional right, but the right, if any, must be found in legislative grant and no authority need be cited for the proposition that, prior to the enactment of the law cited, no right of appeal existed from an order granting a new trial, such as that now under consideration. This order was clearly interlocutory. There is no final judgment before us, and the right of final disposition, as we construe the statutes, can only be exercised by us when there is an appeal from a final judgment in the case in which the vacated judgment was rendered. · The errors in the main case may be considered by us for the purpose, and the purpose only, of determining whether the trial court, in granting the motion for a new trial, exercised the proper judicial discretion. In 2 Ruling Case Law, p. 188, § 161, it is said, among other things, that:

"An appeal from an order granting a new trial brings before the appellate court the action of the court below as to every question germane to the inquiry, whether the lower court's action was in accordance with law or not, but the only questions to be considered are those involved in such order."

See, also, Fagan v. Lentz, 156 Cal. 681, 105 P. 951, 20 Ann. Cas. 221; Wadman v. Burke, 147 Cal. 351, 81 P. 1012, 1 L. R. A.

(N. S.) 1192, 3 Ann. Cas. 330, both by the Supreme Court of California.

We do not wish to be understood as ruling that, under no state of facts, or under different statutes, the contentions of appellant for the correction of the judgment and of the appellees for reversal and rendition of the judgment would be authorized., What we hold is that, under the statutes and circumstances noted, we are without authority to do so. In illustration of our conclusion on this subject, let it be supposed that, in ruling upon the appellees' demurrers to the petition, as the court did, those demurrers had been sustained instead of overruled, as was done. In that event appellant would have had the right to so amend his petition as to avoid·those objections. 'So too had the court excluded the evidence objected to by appellees, on the ground that there was no basis therefor in the pleadings, and, had the court sustained such objections, appellant would perhaps have been allowed to file a trial amendment avoiding the objection, and authorizing the introduction of the evidence. Rulings of like·character on the part of the trial court may be reversed on appeal from a final judgment, but, in the proceedings now before us, we finally conclude that they can be looked to only for the purpose of determining, as we have done, whether the trial court in granting a new trial exercised a power within his judicial discretion.

For the reasons stated, it is ordered that· the judgment of the court granting the new trial complained of on this appeal be in all things' affirmed.